STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott M. LEE, Defendant-Appellant.

Court of Appeals

*No. 92-1954-CR. Submitted on briefs February 2, 1993.—Decided March 16, 1993.*

(Also reported in 499 N.W.2d 250.)

350

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David L. Grace* of *Schmidt, Thibodeau & Grace* of Wisconsin Rapids.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Scott Lee appeals a judgment convicting him of sexual assault, contrary to sec. 948.02(1), Stats. The sole issue is whether his confession was obtained in violation of his constitutional rights. Although the trial court concluded the state had not proved beyond a reasonable doubt that Lee's waiver of his *Miranda*[1] rights was knowing and intelligent, it held that the statement in any event was admissible because there was no police coercion. We conclude that although there was no police coercion, Lee's waiver of his *Miranda* rights must still be made knowingly and intelligently to be admissible. However, because the state's burden of proof as to whether Lee knowingly and intelli-

---

[1] In *Miranda v. Arizona,* 384 U.S. 436, 444 (1966), the United States Supreme Court ruled:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

The privilege against self-incrimination is contained in the fifth amendment to the United States Constitution and reads in part: "No person . . . shall be compelled in any criminal case to be a witness against himself."

gently waived his *Miranda* rights is by the greater weight of the credible evidence as established by the United States Supreme Court in *Colorado v. Connelly*, 479 U.S. 157, 168 (1986), and the Wisconsin Supreme Court in *State v. Rewolinski*, 159 Wis. 2d 1, 16 n.7, 464 N.W.2d 401, 407 n.7 (1990), we remand for a determination of this issue under the lesser burden of proof.

After receiving a complaint that Lee had sexually assaulted two children, detective Jacqueline Albers of the Marshfield Police Department contacted and questioned Lee in a custodial setting. Prior to eliciting responses from Lee, Albers read the *Miranda* rights to Lee. After Lee indicated an understanding of each of the rights, he agreed to waive them and be questioned. Lee concedes the police never used any coercive tactics either to obtain his waiver or during the ensuing questioning. Lee confessed to the sexual assaults, both orally to Albers and in written form by signature to a typewritten synopsis of his statements compiled by Albers.

Lee moved to suppress his statements because their admission violated his constitutional rights under the federal due process clause and Wis. Const., art. I, sec. 8(1). He contended that because of his limited mental capacity, his statements were not voluntary, and he did not validly waive his *Miranda* rights. The trial court concluded that the state had not shown beyond a reasonable doubt that Lee's confession was the result of a knowing waiver. However, relying upon *Connelly* and *State v. Clappes*, 136 Wis. 2d 222, 236-37, 401 N.W.2d 759, 765 (1987), the trial court ruled that it was precluded from considering Lee's personal characteristics relative to a knowing and intelligent waiver absent coercive activity by the interrogating authorities. Thus, the court denied Lee's motion to suppress his statement. Lee then pleaded guilty and was convicted.

This appeal involves the application of facts to federal and state constitutional principles, which we review independently of the trial court. *Clappes*, 136 Wis. 2d at 235, 401 N.W.2d at 765. However, historical factual determinations made by the trial court will be affirmed unless clearly erroneous. Section 805.17(2), Stats.; *see also State v. Esser*, 166 Wis. 2d 897, 903, 480 N.W.2d 541, 543 (Ct. App. 1992).

The state argues that *Connelly* and its Wisconsin progeny limit the analysis of the validity of a *Miranda* waiver and subsequent confession to the existence of government coercion.[2] Lee argues that to be valid, a waiver must be knowing and intelligent as well as voluntary, and that even if the lack of police coercion mandated that his *Miranda* waiver was voluntary, the waiver was not knowing and intelligent. Because of *Connelly's* fundamental effect on custodial confessions taken after *Miranda* waivers, we first analyze *Connelly*[3] before turning to Wisconsin state law, which follows *Connelly's* dictates.

## I. *CONNELLY* ANALYSIS

*Connelly* involved a chronic schizophrenic who approached a uniformed but off-duty police officer and stated that he had murdered someone and wanted to talk about it. Connelly was not in custody when he made his initial statements, but eventually was taken into custody and read his *Miranda* rights. Connelly sought to suppress both his pre-custodial and custodial statements

---

[2] The trial court relied on *Connelly* and *Clappes* for this same proposition. *Clappes* involved a noncustodial situation and thus is not applicable here.

[3] Our analysis of *Connelly* mirrors that of the Illinois Supreme Court in *People v. Bernasco*, 562 N.E.2d 958 (Ill. 1990).

because of his limited mental capacity. *Connelly,* 479 U.S. at 161-62.

The Colorado Supreme Court held that because there was evidence that Connelly had been suffering from a serious mental disorder, the trial court correctly suppressed the statements after finding that he lacked a rational intellect and free will sufficient to make either his pre-custodial confession or his custodial waiver of *Miranda* rights voluntarily. *People v. Connelly,* 702 P.2d 722, 728-29 (Colo. 1985).

The United States Supreme Court reversed, holding that in order to satisfy the fourteenth amendment's due process requirements as to voluntariness, it is sufficient that a confession not be caused by coercive police conduct. *Connelly,* 479 U.S. at 167. The Court rejected any conclusion that, "by itself and apart from its relation to official coercion," a defendant's mental condition might determine constitutional voluntariness." *Id.* at 164. Accordingly, any voluntariness inquiries into a confessing defendant's state of mind, "inquiries quite divorced from any coercion brought to bear on the defendant by the State," should be left for resolution by state evidence rules pertaining to reliability. *Id.* at 166-67.

The *Connelly* Court reversed the underlying Colorado judgment in its entirety because the Court believed the Colorado Supreme Court's judgment had been influenced by an erroneous view of constitutional voluntariness requirements. *Id.* at 171 n.4. However, the majority specifically noted that the Colorado Court may have found Connelly's waiver invalid on other grounds and stated that reconsideration of other issues, not inconsistent with its opinion, was open to the Colorado Supreme Court on remand. *Id.* The *Connelly* majority's reference to the Colorado Court finding the *Miranda* waiver invalid "on other grounds" was a recognition that the

*Miranda* waiver needs to be knowing and intelligent as well as voluntary.

*Miranda* itself provides that "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444. After *Connelly*, the United States Supreme Court in *Colorado v. Spring*, 479 U.S. 564 (1987), reiterated that *Connelly* did not abolish the knowing and intelligent requirements. Regarding *Miranda* waivers, the *Spring* Court provided:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 573 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986), and *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

The *Spring* decision demonstrates that *Connelly* did not abrogate the requirement that a *Miranda* waiver be knowing and intelligent. Rather, *Connelly* merely means that, in general, issues of intelligent knowledge are distinct from issues of voluntariness. *See Bernasco*, 562 N.E.2d at 961. The *Connelly* opinion addressed (1) an initial confession given under circumstances requiring no *Miranda* warning, the voluntariness of the confession being at issue, and (2) subsequent confessions given after *Miranda* warnings, the voluntariness of the *Miranda* waivers being at issue. *See Bernasco*, 562 N.E.2d at 961.

At no point did *Connelly* overrule the *Burbine, Fare* and *Miranda* requirement that a *Miranda* waiver be intelligent and knowing as well as voluntary.[4] The *Connelly* opinion analyzed merely the constitutional voluntariness component of a confession's admissibility and of a waiver's validity. *Bernasco*, 562 N.E.2d at 961 (citing *Connelly*, 479 U.S. at 167, 170).

The court in *United States v. Bradshaw*, 935 F.2d 295 (D.C. Cir. 1991), agreed with this analysis. It wrote "[w]e read *Connelly* . . . as holding only that police coercion is a necessary prerequisite to a determination that a waiver was *involuntary* and not as bearing on the separate question whether the waiver was knowing and intelligent." *Id.* at 299.

We agree with the D.C. Circuit's remark that some of the *Connelly* majority's reasoning with regard to voluntariness may also apply to knowing intelligence. *Bradshaw*, 935 F.2d at 299. For example, *Connelly* observed that evidence should not be excluded unless suppression would deter future constitutional violations. *Bradshaw*, 935 F.2d at 299 (citing *Connelly*, 479 U.S. at 166). Here, where the evidence shows that there was no police coercion, it is difficult to envision what constitutional violation this suppression would deter. However, the law of the land, as enunciated in *Spring*, 479 U.S. at 573, requires a particular showing of knowing intelligence in order for a valid *Miranda* waiver to take place.

---

[4] We agree with *Bernasco's* comment that there remains a world of difference between voluntariness and intelligent knowledge. A mentally ill person may "confess" at length without external compulsion but not intelligently and knowingly, while a perfectly rational person on the torture rack may confess intelligently and knowingly but not voluntarily. *Id.* at 962.

## II. WISCONSIN CASE LAW

In *State v. Hanson,* 136 Wis. 2d 195, 217, 401 N.W.2d 771, 780 (1987), the Wisconsin Supreme Court stated: "If and when the United States Supreme Court interprets the federal constitution as granting lesser rights than this court believes are extended to persons under the Wisconsin Constitution, we will so hold." Thus far, however, Wisconsin has squarely aligned itself with the rulings of the United States Supreme Court. *Id.* A recent statement of Wisconsin law on the admissibility of confessions obtained in custodial settings appears in *State v. Mitchell,* 167 Wis. 2d 672, 482 N.W.2d 364 (1992). Though *Mitchell* does not cite *Connelly,* it is, with one exception discussed below, consistent with the holding of the United States Supreme Court and does not base its ruling particularly on the Wisconsin Constitution or law, as distinguished from federal constitutional standards. Thus, in the absence of a directive from the Wisconsin Supreme Court, we apply the law of *Mitchell* so far as it is consistent with the dictates of *Connelly.*[5]

---

[5] The state cites *State v. Schindler,* 146 Wis. 2d 47, 429 N.W.2d 110 (Ct. App. 1988), where we stated that the defendant's concession of no improper police coercion ends our inquiry into the effect of his low I.Q. and emotional condition. *Id.* at 49, 429 N.W.2d at 111. *Schindler,* while it recognized that a *Miranda* waiver must be voluntary, knowing and intelligent, only dealt with the voluntariness component. Here, we acknowledge that the lack of police coercion mandates a finding of voluntariness, but examine the additional *Miranda* waiver requirement of knowing intelligence.

## A. The *Mitchell* Test

It is undisputed that Lee's statements were taken while he was in a custodial setting. *Mitchell* holds that when seeking admission of statements made during custodial questioning, the state must make two separate showings. *Id.* at 696, 482 N.W.2d at 374 (citing *State v. Hernandez*, 61 Wis. 2d 253, 258-59, 212 N.W.2d 118, 120-21 (1973)). First, the state must establish that the defendant was informed of his *Miranda* rights, understood them and intelligently waived them. *Id.* (citing *Hernandez*, 61 Wis. 2d at 258, 212 N.W.2d at 120). Second, the state must establish under *Goodchild*[6] that the defendant's statement was voluntary. *Id.* (citing *Hernandez*, 61 Wis. 2d at 258, 212 N.W.2d at 120). In the absence of countervailing evidence, once the state has established a prima facie case of waiver of *Miranda* rights and voluntariness of an in-custody statement, the statement should be admitted into evidence. *Id.* (citing *Hernandez*, 61 Wis. 2d at 258, 212 N.W.2d at 120).[7]

---

[6] In *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 264, 133 N.W.2d 753, 763 (1965), Wisconsin applied the rule of *Jackson v. Denno*, 378 U.S. 368, 378 (1964), and established the *Goodchild* hearing. The purpose of a *Goodchild* hearing is to make a court determination as to whether a statement given is voluntary as a matter of constitutional fact, i.e., is it "constitutionally antiseptic." *Krebs v. State*, 64 Wis. 2d 407, 417, 219 N.W.2d 355, 360 (1974). The second prong of the *Mitchell* test is, in effect, a *Goodchild* hearing determination.

[7] The *Mitchell* test does not explicitly require that a *Miranda* waiver be voluntary. The first prong of the test inquires about whether the defendant understood and intelligently waived his rights, and the second prong inquires into the voluntariness of the statement, but not necessarily the waiver. *Mitchell*, 167 Wis. 2d at 696, 482 N.W.2d at 374. However, because of *Connelly's* hold-

### 1. Prima Facie Burdens

In *Mitchell,* the Wisconsin Supreme Court discussed how the state can meet the two prima facie burdens.

> [A]s to *Miranda,* the general rule is that a prima facie case will be established "when the state has established that defendant has been told or has read all the rights and admonitions required in *Miranda,* and the defendant indicates he understands them and is willing to make a statement."
>
> . . ..
> Under the . . . *Goodchild* standard, a prima facie case will be established "when the state has established that the statement to be offered is, in fact, the statement of the defendant, that he was willing to give it, and that it was not the result of duress, threats, coercion or promises."

*Id.* at 697-98, 482 N.W.2d at 374 (quoting *Hernandez,* 61 Wis. 2d at 259, 212 N.W.2d at 121).

■

In this case, the state has met both prima facie burdens. The police read Lee his *Miranda* rights. Lee indicated that he understood them and was willing to make a statement. Thus, the state proved a prima facie case that Lee validly waived his *Miranda* rights. Likewise, the state has shown that the statement offered was made by Lee and was not the result of duress, threats,

---

ing that some police coercion is necessary in order to show involuntariness of either the *Miranda* waiver or the statement, as discussed below, the voluntariness component of a *Miranda* waiver is satisfied by a prima facie showing by the state of compliance with the second *Mitchell* prong, that dealing with the voluntariness of the statement.

coercion or promises. Thus, the state has also proved a prima facie case that Lee's statements were voluntary.

## 2. Countervailing Evidence

Therefore, the statements should be admitted unless "countervailing evidence" shows that Lee did not validly waive his *Miranda* rights, or that either the *Miranda* waiver or Lee's statements were not voluntary. *See Mitchell*, 167 Wis. 2d at 696, 482 N.W.2d at 374; *Hernandez*, 61 Wis. 2d at 258, 212 N.W.2d at 120.

A finding that countervailing evidence shows that either the *Miranda* waiver or Lee's statements were involuntary is foreclosed by *Connelly's* requirement that governmental coercion cause the involuntariness and the state proving as part of its *Mitchell* prong two prima facie showing that no such coercion exists. However, Lee may still show countervailing evidence that his waiver was not knowing and intelligent.

What "countervailing evidence" means in this context has never been explained. *See Mitchell*, 167 Wis. 2d at 696, 482 N.W.2d at 374; *Hernandez*, 61 Wis. 2d at 258, 212 N.W.2d at 120; *Krebs*, 64 Wis. 2d at 417, 219 N.W.2d at 360. Whether considering the countervailing evidence Lee has knowingly and intelligently waived his *Miranda* rights should be determined with regard for the totality of the circumstances. *See State v. Woods*, 117 Wis. 2d 701, 721-22, 345 N.W.2d 457, 468 (1984).

As explained, the *Connelly* holding requiring police coercion to show "involuntariness" does not affect the knowing and intelligent portions of the *Mitchell* test. However, *Connelly* also discussed the state's burden to show a valid waiver. Thus, the *Connelly* decision does

affect the knowing and intelligent prong of the *Mitchell* test.

### 3.   The State's Burden

Before relying on *Clappes* and *Connelly* for the proposition that coercive police action was required to suppress the statements, the trial court found that the state had not shown beyond a reasonable doubt that Lee's waiver was knowing. We conclude that the trial court's determination, made after hearing the testimony of four specialists, is supported by credible evidence. Section 805.17(2), Stats.

However, a dispute remains whether the state must show that the defendant's *Miranda* waiver was knowing and intelligent beyond a reasonable doubt or by the greater weight of the credible evidence. In *Mitchell*, the Wisconsin Supreme Court, relying on *Hernandez*, stated that the burden was beyond a reasonable doubt. *Id.* at 696, 482 N.W.2d at 374. However, the state's burden was not directly at issue in *Mitchell* and the *Mitchell* opinion did not address the United States Supreme Court decision in *Connelly*.[8]

*Connelly* reaffirmed the United States Supreme Court's position in *Lego v. Twomey*, 404 U.S. 477 (1972), that whenever the state bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of *Miranda*, the state need prove waiver only by a preponderance of the evidence. *Connelly,* 479 U.S. at 168.

---

[8] We have examined the briefs submitted to the Wisconsin Supreme Court in the *Mitchell* case and note that none of the parties called the *Connelly* decision to the court's attention.

This court in *Esser*, 166 Wis. 2d at 904-06, 480 N.W.2d at 544, a case released slightly before *Mitchell*, also held that the correct standard is the preponderance of the evidence, or its Wisconsin equivalent, the greater weight of the credible evidence. In *Esser*, we held:

> *Lego* does retain authority unto the states to adopt a higher standard *pursuant to their own law*. *Lego*, 404 U.S. at 489, 92 S.Ct. at 626. However, no Wisconsin case which speaks of the "beyond a reasonable doubt" *Miranda* standard has ever adopted such standard under Wisconsin state law. Whether such a burden should be adopted is properly left to our supreme court in the appropriate case. Here, Esser makes no claim under color of state law. Therefore, *Connelly* is the governing law.

*Id.* at 905, 480 N.W.2d at 544 (emphasis in original). *Mitchell*, released after *Esser*, referred to the "beyond a reasonable doubt" standard. However, *Mitchell* did not specifically overrule *Esser* or distinguish *Connelly* by adopting the beyond a reasonable doubt standard under state law. It relied on both the Wisconsin and United States Constitutions and did not distinguish between them.

Moreover, the Wisconsin Supreme Court has recently stated in *Rewolinski*, 159 Wis. 2d at 16 n.7, 464 N.W.2d at 407 n.7, that the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence. For this, the Wisconsin Supreme Court cited *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). The *Matlock* Court cited *Lego*, 404 U.S. at 488-89, the same precedent relied on by *Connelly* and *Esser*.

Therefore, our explanation of *Mitchell* is that it did not address the burden of proof issue, and we conclude that *Connelly* and *Rewolinski* state the law of the land as to the state's burden of proof. Consequently, the state must show only by the greater weight of the credible evidence that Lee's waiver was knowing and intelligent. Because the trial court held the state to a showing of beyond a reasonable doubt, we remand to the trial court for its determination using the correct standard.

On remand, we direct the trial court, when determining whether the waiver was knowing and intelligent, to apply an objective standard. *United States v. Yunis*, 859 F.2d 953, 965 (D.C. Cir. 1988). By "objective standard" we mean that the validity of any *Miranda* waiver must be determined by the court's inspection of the particular circumstances involved, including the education, experience and conduct of the accused as well as the credibility of the police officers' testimony. *Pettyjohn v. United States*, 419 F.2d 651, 654 n.7 (D.C. Cir. 1969). The court will then objectively assess all the aforementioned factors and determine whether the waiver was knowingly intelligent. *Id.*

Additionally, in applying this objective test, the court should be mindful of the federal constitutional distinction between two types of awareness; one not contemplated by the knowing and intelligent *Miranda* waiver requirement, and one required by it. The *Bernasco* court wrote:

> The first type of awareness involves "know[ing] and understand[ing] every possible consequence of a waiver of the Fifth Amendment privilege," being "totally rational and properly motivated" when con-

fessing, or having all information that might be "useful" or that might . . . affec[t one's] decision to confess," such as a list of "all the possible subjects of questioning in advance of interrogation." . . . [T]his mental state is not necessary for a valid *Miranda* waiver. The Constitution does not demand "that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights," and there is no Federal constitutional right to confess only when in possession of information that "could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature."

The second type of awareness involves simply being cognizant at all times of "the State's intention to use [one's] statements to secure a conviction" and of the fact that one can "stand mute and request a lawyer." The latter mental state is what is held necessary for a valid *Miranda* waiver.

*Id.* at 962 (citations omitted). The trial court should determine whether the state has shown by the greater weight of the credible evidence whether, considering the totality of the circumstances, Lee possessed that second type of awareness, and thus validly waived his *Miranda* rights.

*By the Court.*—Judgment reversed and cause remanded.