STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Carlos SANTIAGO, Defendant-Appellant-Cross Petitioner.

Supreme Court

*No. 94–1200–CR. Oral argument September 10, 1996.—Decided December 13, 1996.*

(Also reported in 556 N.W.2d 687.)

5

For the plaintiff-respondent-petitioner the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant-cross petitioner there were briefs and oral argument by *Eduardo M. Borda*, Milwaukee.

SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals,

*State v. Santiago*, 198 Wis. 2d 82, 542 N.W.2d 466 (Ct. App. 1995), reversing a judgment of the Circuit Court for Milwaukee County, John A. Franke and Lee E. Wells, Judges.[1] The defendant, Carlos Santiago, was convicted on entry of a guilty plea to the charge of possession of a controlled substance with intent to deliver contrary to Wis. Stat. §§ 161.14(4)(t) and 161.41(1m)(h) (1991-92).[2]

The principal issue on review is whether the State, in proving the sufficiency of the *Miranda* warnings[3] and a knowing and intelligent waiver of *Miranda* rights, must present evidence of the words spoken by a law enforcement officer advising a suspect of the *Miranda* rights in a language other than English and the translation of the words. Also at issue is the State's burden of persuasion.

At a pretrial hearing on the defendant's motion to suppress incriminating statements the defendant made to the police while in custody, the defendant was precluded from eliciting for the record the entire Spanish-language warnings or a translation of the Spanish words spoken by the officer giving the *Miranda* warnings. Hearing only the testimony of the law enforcement officer that he gave correct *Miranda* warnings to the defendant and evidence elicited by the defendant that the warnings given in Spanish may not have been sufficient, the circuit court held that the State had proven by the greater weight of the credible evidence that the defendant was adequately informed

---

[1] Judge Franke presided at the suppression hearing; Judge Wells presided at the sentencing and entered the judgment of conviction.

[2] All further references are to the 1991-92 Statutes unless otherwise noted.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

of his *Miranda* rights and that the defendant knowingly and intelligently waived those rights. The circuit court denied the defendant's motion to suppress the statement; the defendant was convicted on his guilty plea.

The court of appeals reversed the conviction, concluding that without the Spanish words of the *Miranda* warnings in the record, there was not sufficient evidence for either the circuit court or the court of appeals to determine whether the police complied with the requirements of *Miranda* or whether the defendant knowingly and intelligently waived his rights. The court of appeals remanded the cause to the circuit court for further evidentiary hearings and to make specific findings relating to what the officer told the defendant, whether the Spanish-language *Miranda* warnings reasonably conveyed the *Miranda* rights, and whether the waiver was knowingly and intelligently given. The court of appeals further concluded that the burden of persuasion applied by the circuit court was correct.

We hold that the State is not required in every case to present evidence of the foreign-language words used by the law enforcement officer who gave the *Miranda* warnings to a suspect and the translation of those words. However, if, as in this case, the accused in a timely fashion puts the State on notice of the claim that he or she was not properly advised of or did not knowingly and intelligently waive the *Miranda* rights because of the foreign-language *Miranda* warnings given, the State must produce evidence of the sufficiency of the officer's foreign-language *Miranda* warnings beyond the officer's conclusory statement that the officer gave the proper *Miranda* warnings. The accused's notice to the State of a claim of insufficiency of the *Miranda* warnings in the foreign language or the

11

invalidity of the waiver is timely if the claim is stated in a motion to suppress or the claim is raised during the State's initial presentation of evidence at a hearing.[4] In this case, the defendant put the State on notice during his cross-examination of the informing officer. An informing officer must, upon the accused's request, testify regarding the foreign-language *Miranda* warnings given to the accused and those foreign-language words must be preserved in the record. We further hold that the State must prove the sufficiency of the *Miranda* warnings and the knowing and intelligent waiver of *Miranda* rights by a preponderance of the evidence. *State v. Jones*, 192 Wis. 2d 78, 114a, 532 N.W.2d 79 (1995).[5]

We conclude, as did the court of appeals, that the record of the suppression hearing in this case provides an inadequate basis for any findings of the sufficiency of the Spanish-language *Miranda* warnings or the validity of the waiver. The officer did not testify with respect to the entire Spanish text of the *Miranda* warnings despite the defendant's request; no one translated the words of the informing officer from Spanish to English; and there was some evidence that the warnings given in Spanish did not reasonably convey the *Miranda* rights to the defendant.[6] The State thus did not meet its burden of proof in this case.

Accordingly we affirm the reversal of the conviction and remand the matter to the circuit court, as did the court of appeals. Our directions on remand, how-

---

[4] Wis. Stat. § 971.30(2); Wis. Stat. § 971.31(3).

[5] This is the same standard as proof by the greater weight of the credible evidence. Wis JI—Civil 200 and Comment.

[6] The inquiry is whether the warnings reasonably convey the *Miranda* rights. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (citing *California v. Prysock*, 453 U.S. 355, 361 (1981)).

ever, differ from those of the court of appeals. Because the defendant is deceased, we remand to the circuit court with directions to dismiss the action.[7]

## I.

For purposes of this review the facts are not in dispute. The defendant was arrested in January 1993 in a warrant-authorized entry of his residence. Narcotics officers detained five men in the apartment and confiscated approximately fifteen grams of marijuana. When it became clear that the defendant spoke almost no English, the arresting officer called for John Garcia, a Spanish-speaking police officer of Mexican-American descent, to come to the scene to communicate with the defendant. When a suspect cannot communicate in English, law enforcement officers should give the *Miranda* warnings in a language the suspect understands in order to ensure that the suspect comprehends the *Miranda* warnings and can knowingly and intelligently waive the *Miranda* rights.[8]

---

[7] Mr. Santiago died on April 18, 1996, after the petitions for review and cross-review had been granted. Both the State and defense counsel asked the court to decide the case because the issue raised is of great public importance and is likely to arise again. This court has recognized exceptions to the general rule of dismissal for mootness. *State v. Seymour*, 24 Wis. 2d 258, 261, 128 N.W.2d 680 (1964); *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 228-29, 340 N.W.2d 460 (1983). Wisconsin is home to a large number of persons whose primary language is not English. In order to assure that persons whose primary language is not English are afforded no lesser rights than English-speaking persons when they are in custody we resolve the legal issue the defendant has raised.

[8] For a discussion of the constitutional significance of interpreters, see *State v. Neave*, 117 Wis. 2d 359, 344 N.W.2d 181

At the suppression hearing Officer Garcia testified that although he neither reads nor writes Spanish, he is bilingual and had given Spanish-language *Miranda* rights more than one hundred times. According to Officer Garcia's testimony, he ordinarily carried a Spanish-language *Miranda* card but did not have one with him on the afternoon of the defendant's arrest. It was his usual practice to hand this card to Spanish-speaking suspects to aid in their comprehension of their rights.

Officer Garcia further testified that he first read the defendant the *Miranda* warnings from a printed English-language card and then translated each warning into Spanish "street language." Garcia testified that after he gave the defendant each of the *Miranda* warnings in both English and Spanish he asked the defendant whether he understood. According to Garcia, the defendant responded "yes" in English in answer to each statement, agreed to speak to the officers at the

(1984), *overruled on other grounds by State v. Koch*, 175 Wis. 2d 684, 693-94, 499 N.W.2d 152, *cert. denied*, 510 U.S. 880 (1993). For discussions of interpreters, see Director of State Courts Office, *The Wisconsin Court Interpreters Handbook* (1987-88); Susan Berk-Seligson, *The Bilingual Courtroom: Court Interpreters in the Judicial Process* (1990); William E. Hewitt, *Court Interpretation: Model Guides for Policy and Practice in the State Courts* (State Justice Institute 1995); *Minnesota Supreme Court Task Force on Racial Bias in the Judicial System*, 16 Hamline L. Rev. 477 (1993); New Jersey Supreme Court Task Force on Interpreter and Translation Services, *Equal Access to the Courts for Linguistic Minorities* (Final Report 1985); Linda Friedman Ramirez, *et al.*, *When Language is a Barrier to Justice: The Non English-speaking Suspect's Waiver of Rights*, Crim. Just., Summer 1994, at 2;. Special Issue, *Overcoming the Language Barrier: Achieving Professionalism in Court Interpreting*, 20 State Ct. J. (1996).

scene and admitted that the marijuana found in the residence was his.

When questioned about the substance of the warnings given to the defendant, Garcia reported that he had said "apuntar un abogado," intending to mean "appoint you a lawyer." The parties dispute whether Garcia's Spanish apprised the defendant that a lawyer would be appointed for him at no cost.[9]

A second officer, a Spanish-speaker of Puerto Rican ethnicity, spoke to the defendant in Spanish at the police station after Officer Garcia and advised the defendant of his *Miranda* rights. According to this officer's testimony, "apuntar" means literally "to point to" someone and "un abogado" means "a lawyer." This officer further testified that the words "apuntar un abogado" might or might not mean the State would appoint counsel. He stated that the correct Spanish word for "appoint" is "otorgar," but that if the word "apuntar" were used in the context of a *Miranda* warning, he would have been able to discern what "apuntar un abogado" meant.

The defendant testified that Officer Garcia did not speak Spanish very well and that the defendant did not understand the phrase "apuntar un abogado."

The defendant moved to suppress his statements made prior to the second *Miranda* warnings. At the suppression hearing, defense counsel requested that Officer Garcia recite the Spanish words he used to give the *Miranda* warnings, that these words be placed in

---

[9] The suppression hearing took place over the course of three days. Officer Garcia was present in the courtroom for the first two days, but not the third. On the third day defense counsel requested a continuance to recall Officer Garcia to make an offer of proof. The circuit court denied the motion as untimely.

15

the record and that the court interpreter translate them into English for the record. As we explain below, the *Miranda* warnings in Spanish were not transcribed. The circuit court denied the defendant's request to place their translation in the record, reasoning that without the Spanish words in the record the interpreter's translation into English would become the "official" version of Garcia's words and would foreclose the State from challenging the accuracy of the translation. The circuit court was prepared to allow Officer Garcia to write the Spanish words for submission into evidence. Unfortunately, Garcia could not write Spanish. The circuit court also rejected the defense attorney's suggestion that the court interpreter transcribe Garcia's spoken Spanish into written form so that the parties could offer English translations. Instead, the circuit court admitted into evidence Garcia's Spanish-language *Miranda* card.

The circuit court found that Officer Garcia warned the defendant in substantially the words and terms set forth in the Spanish-language *Miranda* card, that the warnings were sufficient, and that the defendant knowingly and intelligently waived the *Miranda* rights when he gave incriminating statements to the police at the time of his arrest.

The court of appeals held that the circuit court's factual finding that Officer Garcia's *Miranda* warnings were substantially similar to those on the Spanish-language card was clearly erroneous. The court of appeals further held that because the circuit court failed to evaluate the words used to inform the defendant of the *Miranda* rights, there was not sufficient evidence for the circuit court to determine whether the warnings were adequate or the rights knowingly and intelligently waived.

16

The court of appeals remanded the cause to the circuit court with directions to permit Officer Garcia to state in Spanish the warnings he had recited to the defendant; to permit the interpreter to transcribe the Spanish words and translate them into English for the record; and to determine, upon evaluation of the warnings, whether they were sufficient and whether the defendant knowingly and intelligently waived the *Miranda* rights.

## II.

The characterization of a trial court's findings of sufficiency of the *Miranda* warnings and waiver of the *Miranda* rights determines the applicable appellate standard of review. If the finding is characterized as one of fact, the standard of review is that the trial court's finding will not be disturbed unless clearly erroneous, Wis. Stat. § 805.17(2). However if the finding is characterized as one of constitutional fact, the appellate court makes a *de novo* finding.[10]

Addressing the related but distinct issue of review of the finding of voluntariness of a suspect's custodial statement, the United States Supreme Court has long held that appellate courts must make an "independent determination" of the ultimate issue of voluntariness. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991); *Davis v. North Carolina*, 384 U.S. 737, 741-42 (1966).[11]

---

[10] Findings of historical fact underlying the ultimate finding of constitutional fact are reviewable under the clearly erroneous standard.

[11] In *Johnson v. State*, 75 Wis. 2d 344, 353, 249 N.W.2d 593 (1977), the court employed a deferential standard of review to voluntariness determinations. More recently, such determinations have been reviewed *de novo. See, e.g., State v. Clappes*, 136 Wis. 2d 222, 235, 401 N.W.2d 759 (1987).

State courts disagree about the appropriate appellate standard of review to apply to a trial court's determinations of the sufficiency of the *Miranda* warnings and of whether the *Miranda* rights have been knowingly and intelligently waived. Some state courts apply the *de novo* standard of review to the sufficiency and waiver questions;[12] others apply the clearly erroneous standard of review.[13] In Wisconsin *de novo* determination by an appellate court has been applied to such questions.[14]

We reaffirm that the sufficiency of the *Miranda* warnings and waiver of *Miranda* rights are ultimate issues of constitutional fact which this court determines *de novo*, benefiting from the analyses of the circuit court and court of appeals.

### III.

When the State seeks to admit into evidence an accused's custodial statement, both the United States and Wisconsin constitutional protections against compelled self-incrimination require that it make two showings. First, the State must prove that the accused was adequately informed of the *Miranda* rights, understood them, and knowingly and intelligently waived them. "[T]he waiver must have been made with a full

[12] *See, e.g., State v. Hoey,* 881 P.2d 504, 519 (Haw. 1994); *State v. Roman,* 616 A.2d 266, 273 (Conn. 1992) (Berdon, J., dissenting), *cert. denied,* 507 U.S. 1039 (1993).

[13] *See, e.g., State v. Green,* 655 So. 2d 272, 280-81 (La. 1995); *People v. Bernasco,* 562 N.E.2d 958, 966 (Ill. 1990), *cert. denied,* 500 U.S. 932 (1991).

[14] *See, e.g., State v. Lee,* 175 Wis. 2d 348, 354, 499 N.W.2d 250 (Ct. App. 1993).

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the State must prove that the accused's statement was given voluntarily.[15] *State v. Mitchell*, 167 Wis. 2d 672, 696, 482 N.W.2d 364 (1992).

Although *Miranda* warnings need not be conveyed by "talismanic incantation," *California v. Prysock*, 453 U.S. 355, 359 (1981), they must convey the substantive message that the suspect has the right to remain silent; that anything the suspect says can be used against him or her in a court of law; that the suspect has the right to have a lawyer and to have the lawyer present if he or she gives a statement; and that if the suspect cannot afford an attorney, an attorney will be appointed for him or her both prior to and during questioning. *Id.* at 361.

The parties do not dispute these applicable legal doctrines and further agree that the burden of proof (both the burden of going forward with the evidence and the burden of persuasion) is on the State to show that the warnings were sufficient and that the waiver was knowing and intelligent. The parties' disagreement turns on what evidence the State must produce to make a prima facie showing that the *Miranda* warnings were sufficient and that an accused knowingly and intelligently waived the *Miranda* rights when the warnings were given in a language other than English. The parties disagree with regard to whether the State must present the foreign-language words used in the *Miranda* warnings and their translation into English.

---

[15] The voluntariness of the defendant's statement is not an issue in this case.

The State contends that when a suspect has been advised of the *Miranda* rights in a language other than English, it need not present evidence of the foreign-language words recited to the suspect, and their translation, in order to make a prima facie showing of the sufficiency of the warnings and waiver. According to the State, an officer's statement to the circuit court at a suppression hearing that an accused was advised of the *Miranda* rights and knowingly and intelligently waived them is sufficient to meet the State's initial burden of production.

The State argues that when an accused questions the sufficiency of the foreign-language words used to convey the *Miranda* warnings or asserts that the waiver was not knowingly and intelligently made because of the foreign-language *Miranda* warnings, the burden is on the accused to present some evidence that the words spoken in the foreign language did not adequately articulate the *Miranda* warnings. According to the State, after the accused has made this showing, the State then has the burden of producing evidence that the foreign-language words used reasonably conveyed the *Miranda* rights.

The defendant asserts that to make a prima facie case the State must present the foreign-language words used to convey the *Miranda* rights to the accused and their translation. According to the defendant, the conclusory testimony of an interrogating officer that he or she informed the accused of the *Miranda* rights in Spanish does not satisfy the State's burden of production or persuasion.

We agree with the State that it need not in every case present the foreign-language *Miranda* warnings and their translation to make a prima facie case that

the warnings in the foreign language were sufficient and that the accused made a knowing and intelligent waiver of the rights. This conclusion does not, however, save the conviction in the case at bar. In the present case the State was put on notice during the presentation of its case at the hearing on the suppression motion that the defendant was claiming that the Spanish-language warnings were inadequate.[16]

■

The defendant in cross-examination of the informing officer was precluded from putting into evidence the informing officer's recitation of the entire foreign-language *Miranda* warnings. Furthermore, even after there was some evidence that the defendant was not properly advised of or did not knowingly and intelligently waive the *Miranda* rights, the State failed to introduce the officer's Spanish-language words and their translation. Nor did the State produce any evidence, except the informing officer's conclusory statement, that the foreign-language words used reasonably conveyed the *Miranda* rights. The State thus did not meet its burden of proof in this case.

---

[16] The defendant's suppression motion challenged the voluntariness of the statements; it did not expressly challenge the sufficiency of the foreign-language *Miranda* warnings. On direct examination the informing officer revealed that he was not able to read or write Spanish and that there were differences in the Spanish dialect that he grew up speaking in Wisconsin and Illinois and Puerto Rican Spanish. He testified that he did not have his Spanish-language *Miranda* card with him when he advised the defendant of the *Miranda* rights. The defendant then raised the issue of the sufficiency of the Spanish-language *Miranda* warnings by seeking to elicit the exact words which the informing officer used.

On cross-examination of Officer Garcia, the defendant asked for a recitation of the *Miranda* warnings given in Spanish to the defendant. The defendant thus attempted to put the Spanish-language *Miranda* warnings into evidence as a first step in showing that the warnings were not sufficient. The defendant was, however, unsuccessful. Circumstances beyond the defendant's control, as well as the actions of the circuit court and the State, blocked the defendant's efforts. Officer Garcia could not write in Spanish; the court reporter, who was English-speaking, was unable to transcribe the spoken Spanish; the interpreter did not transcribe the Spanish words; and the interpreter was prohibited from translating Officer Garcia's Spanish-language warning into English.[17] The defendant was thus deprived of an opportunity to present to the circuit court (and to record for purposes of appeal) the bases for an effective challenge to the State's evidence that the defendant was advised of the *Miranda* rights and waived them. We hold that an informing officer must, upon an accused's request, furnish testimony as to the foreign-language *Miranda* warnings given to the accused and that those words be preserved in the record.

It is clear from the record in this case that counsel, the circuit court and the interpreter vigorously attempted to make an adequate record. The circuit court permitted ample time for witnesses to be produced and was mindful of the constitutional import of the defendant's need for an interpreter. The police were forthcoming with their testimony. The attorneys, along

---

[17] Although the parties or the circuit court might have obtained an audio or videotape recording to preserve the Spanish translation of the *Miranda* warnings, they did not do so.

with the interpreter, suggested mechanisms for preserving the Spanish-language *Miranda* warnings and their translation. Nevertheless, despite these commendable efforts, the record is inadequate; neither the Spanish words nor an English translation of Officer Garcia's warnings is in the record.

We therefore examine the circuit court's rulings prohibiting the interpreter from translating Officer Garcia's Spanish-language *Miranda* warnings.

Under Wisconsin law, an interpreter must be qualified as an expert witness[18] and may function in several capacities.[19] First, an interpreter may translate for the accused statements made by the judge, counsel, witnesses and others during the proceeding. Second, an interpreter may translate communications between counsel and the accused during trial.[20] Third, an interpreter may translate questions posed to and answers provided by a non-English-speaking witness.[21] In the case at bar the interpreter performed the first and third functions.

---

[18] Wis. Stat. § 906.04 provides: "An interpreter is subject to the provisions of chs. 901 to 911 relating to qualification as an expert and the administration of an oath or affirmation that the interpreter will make a true translation." *See also* Judicial Council Committee's Note, 59 Wis. 2d R162-63 (1973).

[19] Wis. Stat. § 885.37.

[20] Wis. Stat. § 905.015 provides that "[i]f an interpreter. . .interprets as an aid to a communication which is privileged. . .the interpreter may be prevented from disclosing the communication by any person who has a right to claim the privilege." The record suggests that the defendant and his counsel communicated directly in Spanish.

[21] An interpreter may serve other functions as well. An interpreter may communicate to defense counsel any errors made by another interpreter translating testimony. As a wit-

When an accused requires an interpreter and witnesses are to testify in a foreign language, the better practice in some cases may be to have two interpreters, one for the accused and one for the court.[22] The circuit court must determine whether more than one interpreter is needed. Several factors, if practicable, may support the need for two interpreters in some cases. First, while an interpreter is translating a witness' testimony he or she cannot assist an accused in communicating with counsel and cannot interpret for the defendant any colloquy between the court and counsel. Second, when a jury is the factfinder it may associate an interpreter who is translating for the accused with the accused and thus either discount the translation or give it more credibility. Third, an interpreter, through association with the accused, may become biased.[23] These factors may not be present in every case. And even if more than one interpreter may be beneficial in a particular case, interpreters may not be available.

In this case the circuit court concluded that a single interpreter was sufficient. The circuit court's rulings about the interpreter's tasks in this case, however, appear inconsistent. The circuit court allowed the interpreter to translate the Spanish testimony of the defendant and his father, yet it did not allow the inter-

---

ness called by the parties or the court, an interpreter may also offer expert testimony. Wis. Stat. §§ 907.02, 907.06.

[22] *See, e.g., State v. Van Pham*, 675 P.2d 848, 859-60 (Kan. 1984); *People v. Carreon*, 198 Cal. Rptr. 843, 846-47 (Cal. App. 1984).

[23] Charles M. Grabau & Llewellyn Joseph Gibbons, *Protecting the Rights of Linguistic Minorities: Challenges to Court Interpretation*, 30 New Eng. L. Rev. 227, 285-86 (1996).

24

preter to translate the Spanish testimony of Officer Garcia.

The circuit court's refusal to allow the interpreter to translate Officer Garcia's Spanish warnings apparently stemmed from a concern that a challenge might be made to the interpreter's translation of Officer Garcia's testimony and that the State would not be able to refute or support the translation because the Spanish words were not in the record. Yet this concern is no more germane to Officer Garcia's testimony than to that of the other Spanish-speaking witnesses. Disputes about a translation can arise any time during a trial in which an interpreter participates. A dispute about the translation of a law enforcement officer's *Miranda* warning should be resolved in the same manner as a dispute about the translation of any other witness' testimony. The circuit court should have been consistent in allowing the interpreter to interpret for Spanish-speaking witnesses.

Despite the rulings of the circuit court, the defendant brought forth some evidence of the insufficiency of Officer Garcia's Spanish translation of the *Miranda* warnings. The defendant elicited testimony that Officer Garcia's use of the word "apuntar" was a potentially confusing and possibly inaccurate attempt to advise the defendant that an attorney would be appointed for him if he was unable to afford one.

An accused who in a timely fashion puts the State on notice that he or she is challenging the sufficiency of the *Miranda* warnings given in a foreign language or the validity of the waiver because of the foreign-language *Miranda* warnings puts the burden on the State to produce evidence (in addition to the informing

25

officer's conclusory statements) that the foreign-language words used reasonably conveyed the *Miranda* rights and that the waiver was knowingly and intelligently made. The issue is one of notice to the State and efficiency of judicial proceedings. The onus on the accused is to put the foreign-language *Miranda* warnings in issue when the State is in a position to present evidence efficiently. The circuit court determines whether the accused has put the State on notice in a timely fashion. The accused's notice to the State of a claim of insufficiency of the *Miranda* warnings in the foreign language or the invalidity of the waiver is timely if the claim is stated in a motion to suppress or the claim is raised during the State's initial presentation of evidence at a hearing. An informing officer must, upon the accused's request, testify regarding the foreign-language *Miranda* warnings given to the accused and those foreign-language words must be preserved in the record.

[14]

In this case the defendant put the State on notice in a timely fashion of his challenge to the sufficiency of the Spanish-language warnings and the waiver during the cross-examination of the informing officer. Without introducing the Spanish-language warnings and their English translation, the State in this case was unable to meet its burden of persuading the circuit court that the warnings given the defendant reasonably conveyed the *Miranda* rights or that the waiver was knowingly and intelligently made.

We agree with the court of appeals that the circuit court's factual finding that Officer Garcia's Spanish-language *Miranda* warnings were substantially similar to those on the Spanish-language card was clearly

erroneous. No evidence supports this finding of fact. The only testimony about the card contradicts this finding. Officer Garcia testified that he had not used the Spanish-language card at the time of the defendant's arrest and that he had used "street language" not corresponding to the printed card. At best, Officer Garcia's testimony that the warnings were adequate was conclusory and did not refute the testimony of the defendant or a fellow police officer that Garcia's use of the word "apuntar" might not signify the appointment of counsel.[24]

In our *de novo* review of the ultimate constitutional findings, we agree with the court of appeals that absent any evidence of the Spanish words that Officer Garcia spoke to the defendant and their translation, the record is inadequate. The circuit court's conclusions that the warnings were sufficient or that the defendant's waiver was knowingly and intelligently made are unsupported by the "totality of the circumstances."[25] The circuit court needed to evaluate the English translation of the foreign-language words spoken to determine whether the substance of the *Miranda* warnings was reasonably conveyed to the defendant or whether a waiver was knowingly and intelligently made.[26]

---

[24] The only Spanish words other than "apuntar" used by Officer Garcia and elicited at the hearing were "derecho" to signify right and "un abogado" to mean a lawyer.

[25] *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

[26] *Higareda-Santa Cruz*, 826 F. Supp. 355, 357 (D. Or. 1993); *Commonwealth v. Colon-Cruz*, 562 N.E.2d 797, 803 (Mass. 1990); *State v. Teran*, 862 P.2d 137, 139 (Wash. App. 1993).

For the reasons stated, we conclude that the record of the suppression hearing provides an inadequate basis for the findings of constitutional fact of the sufficiency of the foreign-language *Miranda* warnings or the validity of the waiver.

## IV.

The second issue is the State's burden of persuasion in a hearing on a motion to suppress a statement that the defendant claims was obtained in violation of the *Miranda* rules. The circuit court and the court of appeals held that the State must prove the sufficiency of the warnings and the waiver by a preponderance of the evidence. The defendant brought a petition for cross-review urging that we adhere to the numerous decisions of this court that require the State to prove these matters beyond a reasonable doubt.[27]

The defendant concedes that in *Colorado v. Connelly*, 479 U.S. 157, 168 (1986), the United States Supreme Court ruled that the State need prove waiver of the *Miranda* rights only by a preponderance of the evidence. The defendant further allows that in *State v. Lee*, 175 Wis. 2d 348, 358, 499 N.W.2d 250 (Ct. App. 1993), the court of appeals declined to accept the United States Supreme Court's invitation to adopt a higher standard under state law. Instead the court of appeals relied on *State v. Esser*, 166 Wis. 2d 897, 904-06, 480 N.W.2d 541 (Ct. App. 1992), which held that

[27] *See, e.g., State v. Mitchell*, 167 Wis. 2d 672, 696, 482 N.W.2d 364 (1992); *Jordan v. State*, 93 Wis. 2d 449, 467, 287 N.W.2d 509 (1980); *Schilling v. State*, 86 Wis. 2d 69, 81, 271 N.W.2d 631 (1978); *Schultz v. State*, 82 Wis. 2d 737, 747, 264 N.W.2d 245 (1978); *Micale v. State*, 76 Wis. 2d 370, 371, 251 N.W.2d 458 (1977); *State v. Hernandez*, 61 Wis. 2d 253, 258, 212 N.W.2d 118 (1973).

the State's burden of proof at a *Miranda* hearing was the greater weight of the credible evidence.

Finally the defendant recognizes that in *Jones*, 192 Wis. 2d at 114a, the court ordered on a motion for reconsideration that the "beyond a reasonable doubt" language in the original opinion be stricken and substituted with the "preponderance of the evidence standard."[28]

The defendant argues that this court amended *Jones* without the benefit of adversarial briefs and that we ought to reconsider *Jones*. We conclude that the *Lee*, *Esser* and *Jones* decisions are in conformity with the minimal federal standard under the Fifth and Fourteenth Amendments, and we decline to re-examine these cases. Accordingly we hold that the State's burden of persuasion in this case is by the preponderance of the evidence.

For the reasons set forth, we conclude that the record of the suppression hearing provides an inadequate basis for any findings of the sufficiency of the foreign-language *Miranda* warnings or the validity of the waiver. We remand to the circuit court with directions to dismiss the action.

*By the Court.*—The decision of the court of appeals is modified and as modified, affirmed.

———————

[28] In the original opinion, the *Jones* court stated: "Since [the defendant] never invoked his fifth amendment right to counsel, the statement he signed . . . is admissible if the State can prove beyond a reasonable doubt that Jones knowingly, intelligently and voluntarily waived his *Miranda* rights." *Jones*, 192 Wis. 2d at 98-99.