State of Wisconsin, Plaintiff-Respondent,
v.
Michael Aloysius Huston, Defendant-Appellant.
No. 03-1325-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 13, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1. PER CURIAM.
Michael Huston appeals a judgment, entered upon a jury's verdict, convicting him of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1).[1] Huston argues the trial court erred by (1) denying his suppression motion because his statements to police were involuntary; and (2) admitting the testimony of a witness disclosed to Huston a few days before trial. Huston also claims that the trial court erroneously exercised its discretion by denying his motion for a new trial based on newly discovered evidence. We reject these arguments and affirm the judgment.

Background
¶2. An amended Information charged Huston with first-degree sexual assault of a child under thirteen years of age, arising from allegations that Huston had sexual contact with eleven-year-old Cassandra T. The trial court denied Huston's motion to suppress statements he made to police. A jury ultimately convicted Huston. His motion for a new trial based on newly discovered evidence was denied and Huston was sentenced to seven years' initial confinement followed by ten years' extended supervision. This appeal follows.

Discussion

A. Suppression Motion
¶3. Huston argues the trial court erred by denying his motion to suppress his statements to police.[2] When determining whether a defendant's custodial statement may be admitted into evidence, the State must show by a preponderance of the evidence that: (1) the defendant was informed of his or her Miranda[3] rights, understood them, and knowingly and intelligently waived them; and (2) the defendant's statement was voluntary. State v. Santiago, 206 Wis. 2d 3, 18-19, 556 N.W.2d 687 (1996). Here, it is undisputed that Huston was in custody and that he was read and waived his Miranda rights before agreeing to speak to police. Therefore, the only issue on appeal is whether Huston's statement was voluntary. Voluntariness is a question of constitutional fact. State v. Moats, 156 Wis. 2d 74, 94, 457 N.W.2d 299 (1990). In reviewing questions of constitutional fact, we uphold a circuit court's factual findings unless clearly erroneous, but we independently determine whether those facts meet the constitutional standard. State v. Samuel, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423.
¶4. Here, Huston argues that his statements were rendered involuntary as a result of "trickery" and "threatening tactics" employed by the police. Specifically, Huston claims his statement was coerced because the interrogating officer (1) violated Huston's body space and raised his voice; and (2) lied about having evidence of semen on Cassandra's pajamas. We are not persuaded.
¶5. Our supreme court has held that a defendant's statements are voluntary if they are "the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist." State v. Hoppe, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. In determining whether Huston's statements were voluntary, we consider the totality of the circumstances. Id., ¶38. This test requires balancing the personal characteristics of the defendant against the pressures and tactics employed by law enforcement officers to induce the statement-pressures and tactics such as the length of the questioning, any delay in arraignment, the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response, and whether the defendant was informed of the right to counsel and right against self-incrimination.
Id., ¶39.
¶6. At the suppression motion hearing, St. Croix County Sheriff's Department Officer Michael Wakeling testified that he interviewed Huston in a large conference room at the St. Croix Sheriff's Department. During the approximately one-hour interview, Wakeling and Huston sat across a table from each other. Wakeling testified that Huston appeared to be of at least average intelligence and did not appear to be ill. Wakeling also testified that he did not use any threats against Huston, his family or friends in an effort to induce Huston's statement. Wakeling never came in physical contact with Huston during the interview, except for removing Huston's handcuffs prior to questioning.
¶7. Wakeling acknowledged that on one occasion during the interview he "violated [Huston's] body space" and raised his voice. Wakeling also acknowledged lying to Huston in an effort to get Huston to give a statement. Wakeling explained, however, that the violation of Huston's space occurred on one occasion toward the end of the interview, in which Wakeling leaned into the table for about ten seconds, coming within a foot-and-a-half of Huston. Wakeling testified that Huston responded by looking Wakeling directly in the eyes and reciprocating the leaning. Wakeling noted that Huston was not nervous and the two got into "kind of a yelling match" when Huston started yelling at him. Thus, the evidence shows that Huston was not intimidated by Wakeling, nor did Wakeling's conduct overpower Huston's ability to resist making a statement.
¶8. With respect to Huston's claim that his statement was rendered involuntary as a result of trickery, Wakeling recounted asking Huston how semen got on Cassandra's pajamas, but acknowledged that the police did not, in fact, have evidence of semen on her pajamas. Wakeling conceded that this was a form of trickery to induce Huston to confess. The interrogation of a suspect may involve some deception, however, and a common form is to exaggerate the strength of the evidence against the suspect. State v. Triggs, 2003 WI App 91, ¶15, 264 Wis. 2d 861, 663 N.W.2d 396. "[L]ies told by police do not necessarily make a confession involuntary; rather, this is simply one factor to consider out of the totality of the circumstances." Id., ¶17. Under the totality of the circumstances, Wakeling's interrogation tactics were not so fundamentally unfair or coercive as to overpower Huston's will. Therefore, the circuit court properly denied Huston's suppression motion.

B. Witness Testimony
¶9. Huston argues the trial court erred by admitting the testimony of a witness because his late disclosure was a violation of the discovery rules. Whether the State violated its discovery obligations requires the interpretation and application of Wis. Stat. § 971.23, a question of law that this court reviews independently. State v. DeLao, 2002 WI 49, ¶14, 252 Wis. 2d 289, 643 N.W.2d 480. The statute provides, in relevant part:
(1) WHAT A DISTRICT ATTORNEY MUST DISCLOSE TO A DEFENDANT. Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the of the following materials and information, if it is within the possession, custody or control of the state:
....
(b) A written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial and the names of witnesses to the defendant's oral statements.
....
(d) A list of all witnesses and their addresses whom the district attorney intends to call at the trial. This paragraph does not apply to rebuttal witnesses or those called for impeachment only.
(e) Any relevant written or recorded statements of a witness named on a list under par. (d).
Wis. Stat. § 971.23(1). The State has a continuing duty to disclose if it "discovers additional material or the names of additional witnesses" at any point "prior to or during trial." Wis. Stat. § 971.23(7). If there is a violation of § 971.23, the remedy is exclusion of the testimony of any witness "not listed" or evidence not presented "unless good cause is shown for failure to comply," or "in appropriate cases," the court may grant a "recess or a continuance" to the opposing party. Wis. Stat. § 971.23(7m)(a). A defendant, however, must show prejudice and surprise to warrant a recess or continuance. See Kutchera v. State, 69 Wis. 2d 534, 543, 230 N.W.2d 750 (1975).
¶10. Here, the trial was scheduled for Thursday, March 14, 2002. At a pretrial hearing, defense counsel indicated that on Friday, March 8, 2002, he received a report from the State that Huston made a jailhouse confession to Frank Jude, admitting to Jude that he had sexually assaulted Cassandra. The State explained that it learned of Jude's existence in a conversation with another witness on or about March 6. The prosecutor further noted that the State "acted on it right away," taking Jude's statement on March 7 and sending a copy of the interview to defense counsel on March 8.
¶11. The State provided Jude's statement to defense counsel within twenty-four hours of when it was taken. The defense then had six days before trial to meet with Jude. Huston never requested a recess or continuance to allow him additional time to meet with Jude or find witnesses to rebut his statements. That Huston was not prejudiced by Jude's late disclosure is demonstrated by the fact that defense counsel found two witnesses he intended to call at trial to rebut Jude's testimony, interviewing them both on the evening before trial. Based on these circumstances, we conclude the trial court did not erroneously exercise its discretion by determining that the State disclosed Jude within a reasonable time before trial.

C. Newly Discovered Evidence
¶12. Huston argues that the trial court erroneously exercised its discretion by denying his motion for a new trial based on newly discovered evidence, consisting of testimony he claims would have impeached Jude's credibility. A trial court may grant a new trial based on newly discovered evidence if the following requirements are met: (1) the evidence was discovered after trial; (2) the moving party was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; (4) the evidence is not merely cumulative to the evidence that was introduced at trial; and (5) it is reasonably probable that a different result would be reached at a new trial. Id. "If the newly discovered evidence fails to meet any of these tests, the moving party is not entitled to a new trial." State v. Avery, 213 Wis. 2d 228, 234, 570 N.W.2d 573 (Ct. App. 1997).
¶13. Here, Huston claimed that Eric Affolter-an inmate who had been incarcerated with Huston and Jude-was privy to information that could have impeached Jude's credibility at trial. At the hearing on Huston's motion for a new trial, Affolter testified that Jude told him he did not like Huston "because of what he was in for," and that Jude mentioned he was going to get a deal for helping. Affolter also testified that Jude attempted to get other inmates to testify against Huston, regardless whether they knew Huston. Although Affolter intimated that Jude was receiving information about Huston's case from some unidentified source, Affolter acknowledged that Jude told Affolter he had obtained some of the information about Huston's case directly from Huston.
¶14. The trial court found that Huston had clearly established (1) that the evidence came to Huston's attention after trial; (2) that Huston was not negligent in discovering the evidence; and (3) that Affolter's testimony was not merely cumulative. With respect to materiality, the court concluded that if the issue is whether Jude is credible, then Affolter's testimony was material; however, if the issue is whether Huston is guilty or innocent, then Affolter's testimony was immaterial as it did not demonstrate that Jude's testimony was untrue nor did it bear directly on the elements of the offense. Ultimately, the trial court concluded that it was not reasonably probable that a different result would be reached at a new trial based on Affolter's testimony. We agree.
¶15. Affolter's testimony did not undermine or contradict Jude's testimony and, in fact, corroborated Jude's contention that Jude got his information directly from Huston. Any statements that Jude had other sources for the information were based purely on Affolter's speculation. Moreover, Affolter's testimony did not demonstrate that Jude lied about what Huston told him. To the extent Affolter's testimony would have called into question Jude's motives for testifying against Huston, our supreme court has held that evidence "only impeaching in character is not ordinarily grounds for a new trial, but it may well be that newly discovered evidence impeaching in character might be produced so strong as to constitute grounds for a new trial; as for example, where it is shown that the verdict is based upon perjured testimony." State v. Canon, 2001 WI 11, ¶23, 241 Wis. 2d 164, 622 N.W.2d 270.
¶16. Here, the newly discovered evidence was not so strong as to show that the verdict was based on perjured testimony, especially where Jude's testimony was but one portion of the State's evidence against Huston. Moreover, Affolter's testimony would not have undermined Cassandra's testimony or Huston's own admission of responsibility to Wakeling. Because it is not reasonably probable that a different result would be reached at a new trial based on Affolter's testimony, we conclude the trial court properly exercised its discretion by denying Huston's motion for a new trial.
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Huston concedes that the interview resulted in a "confusing but technically incriminating statement," in which Huston stated that Cassandra did not lie and that "he took full responsibility for what [Cassandra] said" and "for what's in the report."
[3] Miranda v. Arizona, 384 U.S. 436 (1966).