STATE of Wisconsin, Plaintiff-Appellant,

v.

Niko MaShell TRIGGS, Defendant-Respondent.

Court of Appeals

*No. 02–0447–CR. Submitted on briefs March 26, 2003.*
*—Decided April 30, 2003.*

2003 WI App 91

(Also reported in 663 N.W.2d 396.)

 

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John C. Campion* of *Campion Law Office*, Racine.

Before Brown, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. The State of Wisconsin appeals from an order suppressing inculpatory statements the trial court held were not the voluntary product of a free and unconstrained will because the police misrepresented that there were several witnesses to the incident. Police misrepresentations during an interrogation do not make an otherwise voluntary statement inadmissible, but become one factor in the totality of the circumstances analysis that must be conducted in determining the voluntary nature of the statement. Since we conclude that under the totality of the circumstances the statement was voluntary, we reverse and remand.

¶ 2. Niko MaShell Triggs was charged with discharging a firearm from a vehicle towards a person in violation of WIS. STAT. §§ 941.20(3)(a) and 939.50(3)(c), and carrying a concealed weapon in violation of WIS.

STAT. §§ 941.23 and 939.51(3)(a) (2001–02).[1] Triggs filed a motion seeking to suppress all statements that she had made to the police. After a *Miranda-Goodchild*[2] hearing, the trial court ordered her statements suppressed because it concluded that the investigating officer had made misrepresentations to Triggs concerning the existence of eyewitnesses to induce her to confess after her repeated denials of involvement. The State appeals.

FACTS

¶ 3. The criminal complaint and the trial court's prefatory factual findings provide the setting for the police interrogation of Triggs. In the early morning hours, Officer John Rusfeldt of the Town of Mt. Pleasant Police Department heard what he believed to be a gunshot and headed in the direction of the shot to investigate. Rusfeldt was flagged down by Billy Sparkman, who related that his ex-girlfriend had chased him in her car and when he hid behind a fence, she shot at him from her car. Rusfeldt searched the area where Sparkman had hid and found a spent shell casing and a hole in the fence. Based upon information provided by Sparkman, Rusfeldt provided the information to his dispatch center and a short time later, the Racine police department advised him that it had stopped the vehicle and the suspect.

¶ 4. At the *Miranda-Goodchild* hearing, Rusfeldt testified that he met Triggs at the Racine County Jail and took her into an interrogation room. In preparation

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

for the interview, he read her *Miranda* rights and asked her if she understood her rights; she replied that she worked as a legal assistant for a Milwaukee law firm and she understood her rights. She also responded that she was willing to answer his questions and to make a statement.

¶ 5. In the initial phase of the interview, Triggs denied any knowledge of the shooting the officer was investigating. Rusfeldt confronted Triggs with the physical evidence he had recovered from the scene and his opinion that the bullet hole in the fence was consistent with having been fired from a seated position in a vehicle. He then related the statement given by Sparkman that identified Triggs as the person who shot at him. Finally, he told Triggs, "[I]n that area of the town there are a lot of people who walk around at night and that there were some walking around and did see the incident occur. Described the vehicle to me, and the occupant of that vehicle, as well as what happened." In later questioning from the prosecution, Rusfeldt admitted that the information about other witnesses was false and he made it up in an effort to get Triggs to continue to talk about the incident.

¶ 6. Triggs' first reaction was to ask for a cigarette; the officer responded that he would have to ask the jail supervisor about the smoking policy in the jail. Rather than leave the interrogation room, the officer stayed and explained to Triggs that he wanted to get to the bottom of the incident before she had a cigarette. Rusfeldt testified that Triggs then said that he "did break her and that she would tell [him] everything [he] needed to know." Triggs then gave a statement of the events that matched Sparkman's statement. After Triggs completed her inculpatory statement, the officer escorted her to an outside smoking area.

¶ 7. Triggs testified at the *Miranda-Goodchild* hearing. She recounted that she had been drinking heavily before the incident, and prior to the interrogation by Rusfeldt, she submitted to a breathalyzer test and the result was a blood alcohol content of 0.19%. She also testified that it took effort on her part to speak coherently because of her intoxication. However, in response to questions from the prosecutor, Triggs admitted that she understood her rights and the questions the officer asked were clear and understandable. Rusfeldt testified that he did not observe any outward signs that Triggs was intoxicated.

¶ 8. The trial court held that Triggs had knowingly, intelligently and voluntarily waived her *Miranda* rights. The court then turned to the *Goodchild* issue, the voluntariness of Triggs' statement. Relying on *Schilling v. State*, 86 Wis. 2d 69, 271 N.W.2d 631 (1978), the trial court stated:

> The court is satisfied and would find that the specific misrepresentation of the existence of more than one witness statement implicating the defendant and describing both her and her victim and her automobile rather when known to be false and when made for the specific purpose of misleading the defendant in order to induce her to talk would in fact constitute improper police tactics and pressure. It was a knowingly false statement and was made for the purpose of inducing her to talk recognizing that in the absence of that evidence she was not willing to talk and had in fact denied involvement up to that point.
>
> So the court would find given the context of this case, the nature of the representation, the misrepresentation rather and the specific purpose for which it was made that that did in fact constitute an improper tactic on the part of the officer in order to obtain a statement.

¶ 9. The trial court then turned to a consideration of the totality of the circumstances, pointing out three key circumstances it found significant and relevant. First, Triggs' level of intoxication supported a reasonable inference that her free will and judgment may have been impaired. Second, Triggs' denied involvement in the incident before Rusfeldt misrepresented the strength of the evidence. Third, the nature of the misrepresentation—there were other witnesses to the shooting—was sufficient to overcome Triggs' denials.[3] Weighing these three circumstances, the trial court concluded:

> [T]he statement that she did then make implicating herself in the incident was not the voluntary product of her free and unconstrained will. It did not reflect a deliberate choice on her part, but did in fact represent something that was the product of the misrepresentation that was made to her as to the existence of the evidence.

The court granted Triggs' motion to suppress her statements.

¶ 10. The State asserts the trial court erred as a matter of law when it held that the misrepresentation was a coercive police tactic. The State maintains that the general proposition is that police lies about the strength of the case against a suspect are not coercive and, without more, do not render a confession involuntary. In the alternative, the State contends that if the misrepresentation is coercive or improper, Triggs' statement is voluntary under the totality of the circumstances.

---

[3] The trial court commented that a fourth factor, although not very significant, was Rusfeldt's denial of Triggs' request for a cigarette, closely followed by Triggs' inculpatory statements.

## Standard of Review

¶ 11. In reviewing the voluntariness of Triggs' confession, we examine two determinations made by the trial court, but apply a different standard of review to each. First, the trial court determines the evidentiary or historical facts relevant to the issue in this case, namely, the circumstances surrounding the giving of the confession. Our standard of review of the trial court's findings of evidentiary or historical facts is that those findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *See State v. Armstrong*, 223 Wis. 2d 331, 352, 588 N.W.2d 606 (1999). Second, the trial court then applies those facts to resolve the constitutional questions. These are questions that require the application of constitutional principles to found facts; we independently determine these questions of "constitutional fact." *Id.* at 353.

## Discussion

¶ 12. When the State seeks to admit a defendant's custodial statement into evidence, it must show by a preponderance of the evidence[4] that: (1) the defendant was informed of his or her *Miranda* rights, understood them, and knowingly and intelligently waived

---

[4] Until recently, it was believed that the State's burden of proof at a *Goodchild* hearing was to establish the voluntariness of a confession beyond a reasonable doubt. However, in *State v. Agnello*, 226 Wis. 2d 164, 179–82, 593 N.W.2d 427 (1999), the supreme court reduced the State's burden at the *Goodchild* hearing to prove voluntariness by a preponderance of the evidence.

869

them; and (2) the defendant's statement was voluntary. *State v. Santiago*, 206 Wis. 2d 3, 18–19, 29, 556 N.W.2d 687 (1996). In this case, it is undisputed that Triggs was in custody when she was interrogated and that she was given her *Miranda* warnings. The State's appeal is limited to a challenge to the trial court's suppression of Triggs' statements because they were involuntary.

■

¶ 13. In determining whether Triggs' confession was involuntary, we will independently examine the record and apply the totality of circumstances test, *State v. Kiekhefer*, 212 Wis. 2d 460, 470, 569 N.W.2d 316 (Ct. App. 1997), weighing the defendant's personal characteristics against the pressures the police imposed upon the defendant to induce a response to the questioning, *State v. Albrecht*, 184 Wis. 2d 287, 301, 516 N.W.2d 776 (Ct. App. 1994). In this case, the police made a misrepresentation concerning the strength of the case against Triggs. The issue we must resolve is whether under the totality of the circumstances test, the effect of the misrepresentation created sufficient pressure to overcome Triggs' free will.

¶ 14. We disagree with the State's contention that because police misrepresentations are not inherently coercive, it was error for the trial court to engage in a totality of the circumstances analysis. The State's journey to this conclusion starts with the concept that only "if the defendant establishes coercive conduct, the court must undertake a balancing analysis, weighing the personal characteristics of the defendant against the coercive police conduct, to determine whether the statement was voluntary." *State v. Owen*, 202 Wis. 2d 620, 642, 551 N.W.2d 50 (Ct. App. 1996). The next leg of the State's journey is the argument that there is no rule of law barring police misrepresentations of the strength of

the evidence. The State supports this argument with citation to *Albrecht* and *State v. Woods*, 117 Wis. 2d 701, 345 N.W.2d 457 (1984), *aff'd, Woods v. Clusen*, 794 F.2d 293 (7th Cir. 1986), for the proposition that police misrepresentations "are not inherently coercive or improper so as to render an otherwise voluntary confession involuntary." On the final leg of the journey, the State proposes that because the police misrepresentation was not inherently coercive, Triggs has failed to establish the necessary prerequisite to a balancing of her personal characteristics against coercive police conduct.

¶ 15. The State takes a wrong turn on its journey when it asserts that because there is no rule of law barring misrepresentations during interrogation, misrepresentations are not inherently coercive and do not render a confession involuntary. Case law requires that we take a different turn. The interrogation of a suspect typically requires some deception; a common form of deception is to exaggerate the strength of the evidence against the suspect. Laurie Magid, *Deceptive Police Interrogation Practices: How Far Is Too Far?*, 99 MICH. L. REV. 1168, 1174 (2001). While the *Miranda* Court took a negative view of deceptive interrogation techniques, it imposed few limits on their use, preferring to protect suspects by requiring police to inform suspects of their rights and providing an attorney before starting interrogation. Magid, *supra,* at 1175. The only case in which the United States Supreme Court directly addressed misrepresenting the strength of the evidence against a defendant was *Frazier v. Cupp*, 394 U.S. 731 (1969). In *Frazier*, the police falsely told Frazier that his co-defendant had already confessed; Frazier sought to suppress his inculpatory statements, arguing that the police deception made them involun-

871

tary. *Id.* at 737, 739. The United States Supreme Court held that lies told by the police do not make a confession involuntary.

> The fact that the police misrepresented the statements that [the co-defendant] had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible. These cases must be decided by viewing the "totality of the circumstances."

*Id.* at 739.

¶ 16. Wisconsin courts have dealt with *Frazier* in several contexts. In *Schilling*, the supreme court did not have to address a misrepresentation by investigating officers; rather, the issue was whether police speculation about the possible existence of fingerprints was sufficient to render a confession involuntary. *Schilling*, 86 Wis. 2d at 72, 76. The supreme court stated that if there had been an actual misrepresentation, *Frazier* would apply and "an actual misrepresentation by an interrogator does not ipso facto make a confession inadmissible." *Id.* at 88. In *Woods*, the issue was the impact of misrepresentation by police on Woods' waiver of his right to remain silent and not on the voluntariness of his confession. *Woods*, 117 Wis. 2d at 725. The supreme court embraced the analytical framework of *Frazier* and applied it to an analysis of whether police subterfuge improperly induced Woods to waive his right to remain silent: "[W]e do not believe that the court in *Miranda* adopted a per se rule that the existence of misrepresentations by police during custodial interrogation automatically renders a waiver of the right to remain silent involuntary or a confession given after a waiver of that right inadmissible." *Woods*, 117 Wis. 2d at 725. Finally, in *State v. Fehrenbach*, 118 Wis. 2d 65,

872

347 N.W.2d 379 (Ct. App. 1984), we directly addressed the use of deceit by police to induce a suspect to confess:

> We adopt the conclusion reached in *Frazier* and hold that an interrogator's use of deceit, while relevant, does not by itself make an otherwise voluntary confession inadmissible. As in the federal courts, our trial courts must view all the circumstances surrounding the statement to decide if it was voluntarily given.

*Fehrenbach*, 118 Wis. 2d at 66–67.[5]

¶ 17. While the State would have us hold that a misrepresentation by the police is not coercive or improper and does not require a court to conduct a totality of the circumstances analysis, *Frazier*, 394 U.S. at 739, and *Fehrenbach*, 118 Wis. 2d at 66–67, compel a different result. Both cases clarify that "lies told by the police do not necessarily make a confession involuntary; rather, this is simply one factor to consider out of the totality of the circumstances." *United States v. Velasquez*, 885 F.2d 1076, 1088 (3d Cir. 1989). For that reason, we conclude that the trial court correctly determined that the misrepresentation concerning the strength of the evidence required it to consider the totality of the circumstances.

---

[5] There is one earlier reference to *Frazier v. Cupp*, 394 U.S. 731 (1969), in *Blaszke v. State*, 69 Wis. 2d 81, 88–89, 230 N.W.2d 133 (1975); the supreme court stated, in reference to *Frazier*, "We point out, without deciding the question since it is not posed under the facts of this case, that there is substantial authority that giving a defendant false information does not in itself make a confession inadmissible on the grounds of involuntariness."

¶ 18. Consistent with the *Frazier* and *Fehrenbach* requirement, we will consider the totality of the circumstances surrounding Triggs' inculpatory statement and balance her personal characteristics against the police tactic. *Albrecht*, 184 Wis. 2d at 301. We conduct a plenary review of whether, under the totality of the circumstances, the historical facts meet the constitutional standards for voluntariness. *State v. Hindsley*, 2000 WI App 130, ¶ 37, 237 Wis. 2d 358, 614 N.W.2d 48.

¶ 19. The trial court focused on Triggs' initial denial of involvement in the incident and the police misrepresentation in its consideration of the totality of the circumstances. We will begin with these two concerns.

> Of the numerous varieties of police trickery, however, a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary. Such misrepresentations, of course, may cause a suspect to confess, but causation alone does not constitute coercion; if it did, all confessions following interrogations would be involuntary because "it can almost always be said that the interrogation caused the confession." Thus, the issue is not causation, but the degree of improper coercion .... Inflating evidence of [the defendant's] guilt interfered little, if at all, with his "free and deliberate choice" of whether to confess, for it did not lead him to consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime. In other words, the deception did not interject the type of extrinsic considerations that would overcome [the defendant's] will by distorting an otherwise rational choice of whether to confess or remain silent.

874

*Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992) (citations omitted).

¶ 20. The type of factual misrepresentation employed to induce Triggs' confession went directly to Triggs' connection to the crime. Triggs' initial denial of involvement is what prompted Rusfeldt to detail the evidence he had accumulated. His misrepresentation that there were witnesses to the incident did nothing more than corroborate the truthful information he gave to Triggs, including the physical evidence recovered at the scene, the officer's reasonable inferences flowing from that evidence and, most importantly, the victim's description of the incident and detailed identification of Triggs and the automobile she was driving. Consequently, the trickery in this case bears little upon our analysis of whether under the totality of the circumstances the confession was involuntary.

¶ 21. Next we turn to Triggs' personal characteristics. Triggs was approximately twenty-eight years old at the time of the incident. She was pursuing a BA in criminal justice with a minor in psychology and had completed a paralegal program. Triggs was employed by a law firm. There is no evidence that she had any prior experience with the criminal justice system. Accordingly, Triggs' personal characteristics would not make her susceptible to police tactics designed to overcome her free will and judgment.

¶ 22. The trial court found that Triggs' intoxication impaired her free will and judgment. We disagree. Evidence of intoxication "should not affect the admissibility of the [statement] where there is no proof that the confessor was irrational, unable to understand the questions or his responses, otherwise incapable of giv-

ing a voluntary response, or reluctant to answer the questions posed by the authorities." *State v. Clappes*, 136 Wis. 2d 222, 241–42, 401 N.W.2d 759 (1987). While there is evidence that Triggs had consumed a large quantity of alcohol, there is no evidence that as a result, she did not understand her *Miranda* rights or the questions being asked by Rusfeldt or that she talked or behaved irrationally during the interrogation. In addition, we conclude that there is no evidence that Rusfeldt's failure to immediately provide Triggs with a cigarette caused Triggs any physical or psychological discomfort. Consequently, neither her level of intoxication nor her request for a cigarette rendered her incapable of exercising her free will and judgment.

¶ 23. Finally, we will consider the interrogation. The interrogation was conducted shortly after Triggs was taken into custody and did not last more than forty-five minutes. The interrogation room had glass on two sides, a table and several chairs. Rusfeldt was the only officer to question Triggs, who was neither handcuffed nor restrained in any manner. Triggs was given warnings of her constitutional rights before the interrogation began. Rusfeldt used a conversational tone of voice throughout the interrogation and Triggs maintained a casual demeanor. Accordingly, we conclude that the conditions of the interrogation had no impact on Triggs' free will and judgment.

CONCLUSION

¶ 24. Police misrepresentation is not so inherently coercive that it renders a statement inadmissible; rather, it is simply one factor to consider out of the totality of the circumstances. We conclude that the trial

court erred in finding that under the totality of the circumstances, Triggs' inculpatory statement "was not the voluntary product of her free and unconstrained will. It did not reflect a deliberate choice on her part, but did in fact represent something that was the product of the misrepresentation that was made to her as to the existence of evidence." After our independent review of the record, we conclude that under the totality of the circumstances, Triggs' statement was the product of a free and deliberate choice.

*By the Court.*—Order reversed and cause remanded.