PER CURIAM.
¶1 Eduardo Gabriel appeals from a judgment, entered upon his no-contest plea, convicting him on one count of second-degree sexual assault of a child. Gabriel also appeals from an order denying his postconviction motion. Gabriel contends that the circuit court erroneously denied his motion to suppress his inculpatory statement, which he claims was involuntary. We reject Gabriel's argument and affirm the circuit court.
BACKGROUND
¶2 Gabriel was charged with three counts of first-degree sexual assault of a child under age thirteen based on allegations from then-eight-year-old E.D.M., who complained that, on more than one occasion, Gabriel had taken off her underwear and licked her vagina. She also said that, on one occasion, he rubbed his penis on her arm "like a paintbrush going side to side." E.D.M. is the younger half-sister of Gabriel's son, who is about four years older than her. When interviewed, E.D.M. reported that one assault occurred while she and her half-brother were asleep in the same bed. She indicated that her half-brother opened his eyes a little bit and then went back to sleep; the next morning, he asked her what Gabriel was doing to her, and she told him what had happened.
¶3 Gabriel was taken into custody and read his Miranda[1] rights. He initially requested an attorney but shortly thereafter indicated he was willing to speak with detectives. He was interviewed by two detectives, who re-read the Miranda rights. The interrogation was recorded. Gabriel initially denied improper contact with E.D.M. During the interview, the detectives told Gabriel that his son had told police that he had seen his father lick E.D.M.'s vagina. About thirty-five minutes into the interview, one of the detectives said, "Who am I going to arrest here, your son for lying to me or you?" Gabriel persisted in his denials for another half-hour before admitting he had mouth-to-vagina contact with E.D.M.
¶4 Gabriel filed a pretrial motion to suppress his inculpatory statement. He asserted that he had not fully understood the Miranda rights, apparently because his primary language is Spanish and he had difficulty understanding one detective's accented English, so he had not knowingly waived his rights. Gabriel also claimed police made various false representations to him that were "so exaggerated and egregious as to render the ultimate confession involuntary."[2]
¶5 The circuit court held an evidentiary hearing at which the two detectives and Gabriel testified. The circuit court noted that it had spent about ten hours reviewing the recording of the interrogation. Ultimately, the circuit court rejected Gabriel's claim that he did not understand English well and concluded that Gabriel had properly waived his rights. It made various additional findings, some of which will be discussed herein, and concluded that Gabriel's confession was voluntary. It thus denied the motion to suppress.
¶6 After the circuit court denied suppression, Gabriel entered a no-contest plea to an amended charge of second-degree sexual assault of a child. The two remaining first-degree charges were dismissed and read in. The circuit court sentenced Gabriel to ten years of initial confinement and ten years of extended supervision.
¶7 Gabriel then filed a postconviction motion, arguing the circuit court erroneously exercised its discretion when it denied the suppression motion. Specifically, Gabriel claimed that Lynumn v. Illinois , 372 U.S. 528 (1963), requires suppression based on the detective's threat to arrest and jail his son.[3] The circuit court distinguished Lynumn and denied the motion. Gabriel appeals.
DISCUSSION
¶8 We first note the scope of Gabriel's appellate challenge. His pretrial suppression motion alleged that he had not knowingly waived his Miranda rights and that his confession was involuntary because police presented him with false statements of fact. The circuit court determined that Gabriel adequately understood and knowingly waived his rights. The circuit court also noted that some deception by police is permitted, and any police misrepresentation is simply one factor to be considered. See State v. Triggs , 2003 WI App 91, ¶¶15, 24, 264 Wis. 2d 861, 663 N.W.2d 396 ("The interrogation of a suspect typically requires some deception; a common form of deception is to exaggerate the strength of the evidence against the suspect.").
¶9 Gabriel does not revisit these rulings on appeal. Rather, he focuses his appellate challenge solely on one of the detectives asking, "Who am I going to arrest here, your son for lying to me or you?" Specifically, Gabriel contends "that it was the threat to arrest and jail [his] son, and only that threat , that broke the defendant's resolve." We similarly limit our review to whether the detective's question rendered Gabriel's statement involuntary.
¶10 "The question of voluntariness involves the application of constitutional principles to historical facts." State v. Hoppe , 2003 WI 43, ¶34, 261 Wis. 2d 294, 661 N.W.2d 407. We defer to the circuit court's findings of historical fact, but we independently apply constitutional principles to those facts. See id. "The well-established test for voluntariness balances the personal characteristics of the defendant against pressures imposed by law enforcement officers[.]" State v. Lemoine , 2013 WI 5, ¶3, 345 Wis. 2d 171, 827 N.W.2d 589. "A statement is voluntary if the pressures exerted by the police do not exceed the defendant's ability to resist." Id. , ¶14.
¶11 Relevant personal characteristics to be considered include "the defendant's age, education and intelligence, physical and emotional condition, and prior experience with law enforcement." See Hoppe , 261 Wis. 2d 294, ¶39. The police "pressures and tactics" against which we balance those personal characteristics include the length of the interrogation, the general conditions under which any statements were given, any excessive physical or psychological pressure used on the defendant, any inducements or threats made to compel a response, and whether the defendant was appropriately advised of the rights to counsel and against self-incrimination. See id. This is a "totality of the circumstances" review. See id. , ¶38.
A. The Pretrial Suppression Motion
¶12 The circuit court, in a commendably thorough oral decision on the suppression motion, made factual findings on all of the Hoppe considerations. It noted that Gabriel was in his forties, had gone to high school in Puerto Rico, sufficiently understood English, and appeared to be of normal intelligence with no intellectual disability. It commented that there was nothing in the record to suggest that, at the time of the interrogation, Gabriel had a "compromised physical or emotional condition." It also noted that Gabriel had prior contact with law enforcement and that he had successfully navigated the system without the aid of an interpreter-Gabriel was using an interpreter in these proceedings. Regarding police tactics, the circuit court found that the interrogation lasted about two and one-half hours, which it considered not excessively long; the room conditions were unremarkable; there was no physical pressure used against Gabriel; and there were no inducements or threats made. As noted, the circuit court had also concluded that there was no Miranda violation.
¶13 The circuit court appears to have evaluated the detective's comment about arresting Gabriel's son as a form of "psychological pressure." See Hoppe , 261 Wis. 2d 294, ¶39. The circuit court noted that the statement was explicitly made only once, but did introduce an "external circumstance that could interfere with otherwise rational choice." However, the circuit court further noted that it was another half-hour after the detective's comment before Gabriel made a confession. This passage of time suggested to the circuit court that the detective's comment "was not sufficient to make [Gabriel's] statement the product of something other than free and unconstrained will." Ultimately, the circuit court concluded that, in light of the totality of the circumstances, Gabriel's inculpatory statement was voluntary.
¶14 Gabriel does not challenge the majority of the circuit court's findings of historical fact, and we see no basis on which to reverse those findings-they are not clearly erroneous. He does argue that the circuit court "makes too much of the existence of a 30-minute interval between the time that the threat was made and the time that [he] confessed," asserting that it was "only 30 minutes" and that this brief interlude actually "highlights ... the coercive nature of the threat[.]"
¶15 However, the passage of time was only one of multiple factors that the circuit court considered when balancing Gabriel's personal characteristics against the police pressures and tactics. We agree with the circuit court that, based on the totality of the circumstances, the police pressures did not exceed Gabriel's ability to resist, see Lemoine , 345 Wis. 2d 171, ¶14, so his statement was voluntary and the motion to suppress properly denied.
B. The Postconviction Motion
¶16 Gabriel also believes that his case parallels that of the defendant in Lynumn . Based on that case, Gabriel's postconviction motion essentially sought reconsideration of the earlier denial of suppression, arguing that suppression should have been granted. We disagree with Gabriel's comparison; Lynumn is distinguishable.
¶17 On January 17, 1959, James Zeno was arrested by three Chicago police officers for unlawful possession of marijuana. See Lynumn , 372 U.S. at 529. The officers told Zeno that if he could set someone up for them, they would go light on him. See id. Zeno set up Lynumn, whose children were three and four years old. See id. at 529-31. Lynumn was arrested in the hallway outside her apartment and interrogated inside her home, surrounded by the officers and Zeno. See id. Lynumn gave an oral confession, stating she had sold marijuana to Zeno, but she testified at trial that her confession had been coerced. See id. at 530-31. She testified that one of the officers " 'started telling me I could get 10 years and the children could be taken away, and after I got out they would be taken away and strangers would have them[.]' " See id. at 531. The Supreme Court noted that officers "largely corroborated" this testimony; one officer even warned Lynumn that her state financial aid " 'would probably be cut off.' " See id. at 532-33. Lynumn had also testified that she believed that if she cooperated and answered the questions the way police wanted her to do, she would not be prosecuted. See id. at 531. Lynumn was, however, prosecuted, convicted, and sentenced to a minimum of ten years' imprisonment. See id. at 529.
¶18 The Supreme Court held that Lynumn's confession was coerced:
It is thus abundantly clear that [Lynumn's] oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not "cooperate." These threats were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly "set her up." There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal law, and had no reason not to believe that the police had ample power to carry out their threats.
Id. at 534.
¶19 In his postconviction motion, and again on appeal, Gabriel argues that the police in Lynumn "threatened the defendant with the loss of her children if she did not confess to possession and sale of marijuana.... So, too, in this case, the police clearly, openly and obviously threated the defendant with the loss of his son unless he confessed." However, this argument ignores the applicable legal standard: whatever psychological pressures police might have brought to bear in their interrogation, those pressures are balanced against the defendant's personal characteristics considering the totality of the circumstances. See Hoppe , 261 Wis. 2d 294, ¶¶38-39. Gabriel focuses on only a single circumstance.
¶20 In denying Gabriel's postconviction motion, the circuit court explained:
The facts of this case are distinguishable. While [Gabriel] was told at one point in the interview that his son could get in trouble or arrested if he was not telling the truth, the totality of the police interview did not support a finding that his statements were the product of something other than a free and unconstrained will. Moreover, unlike Lynumn, [Gabriel] had prior experience with law enforcement, his son was not an infant, and the defendant persisted in his denials for roughly half an hour after the statement about his son was made. The court fully analyzed the facts and circumstances presented, the video of the confession, the characteristics of the defendant, his demeanor and reaction to the police statement, as well as the police tactics employed, and determined by a preponderance of the evidence that his confession was the result of a free and deliberate choice. The defendant has not demonstrated an erroneous exercise of discretion, and therefore, his motion to reverse the suppression ruling is denied.[4 ]
¶21 We agree with the circuit court's distinctions between Lynumn and this case. We would additionally note that Gabriel had the benefit of Miranda rights, while Lynumn, whose case predates Miranda by three years, did not.
¶22 Moreover, the threats to Lynumn regarding her children were wholly extrinsic to the marijuana investigation. While the circuit court was unable to determine precisely how much Gabriel's son might have told police or if he had even spoken to police before the interrogation, police at least knew, from E.D.M. herself, that the boy had probably witnessed one of the assaults. Thus, the detective's reference to Gabriel's son, even if the nature of it was slightly exaggerated, did at least bear some factual relationship to the investigation and interrogation.
¶23 Accordingly, we conclude Lynumn is not controlling and does not dictate suppression in this case. We therefore conclude the circuit court also appropriately denied the postconviction motion seeking to revisit the original denial of suppression.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

See Miranda v. Arizona , 384 U.S. 436 (1966).

The comment about arresting Gabriel's son was not expressly identified or challenged in the motion, although trial counsel did discuss it during her argument at the motion hearing.

The circuit court's factual findings do not reflect that the detective threated to jail Gabriel's son, only to arrest him.

On appeal, Gabriel's appellant's brief is a nearly identical copy of his postconviction motion. As a result, the brief does not even mention, much less address, the circuit court's reasoning for denying the postconviction motion.