COURT OF APPEALS
DECISION
DATED AND FILED

October 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2102**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022JV71

**IN COURT OF APPEALS
DISTRICT II**

---

IN THE INTEREST OF K.R.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

K.R.C.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Manitowoc County: JERILYN M. DIETZ, Judge. *Affirmed*.

¶1     NEUBAUER, J.[1] K.R.C., a juvenile referred to herein by the pseudonym Kevin, appeals from an order adjudicating him delinquent of one count of fourth-degree sexual assault. He contends that the trial court erred in denying a motion to suppress statements he made to law enforcement because the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and were not voluntarily given. Kevin also challenges the admission at trial of testimony about other instances in which he and others had engaged in behavior similar to that underlying the charge, arguing that the testimony violated WIS. STAT. § 904.04(2)(a).

¶2     As explained in greater detail below, this court concludes that the police did not violate Kevin's rights under *Miranda* because he was not in custody during either of two interviews with them and that his statements during those interviews were given voluntarily. Accordingly, the trial court did not err in denying his motion to suppress. As for Kevin's claim under WIS. STAT. § 904.04, this court concludes that even if the trial court erroneously exercised its discretion in admitting testimony about similar incidents, that error was harmless. Accordingly, this court affirms the delinquency order.

**BACKGROUND**

¶3     In July 2022, the State filed a delinquency petition asserting that Kevin, then thirteen years old, had sexually assaulted another student at school in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

violation of WIS. STAT. § 940.225(3m).[2]  According to the petition, the charge arose out of an incident in June 2022 in which Kevin grabbed the victim's "private area" in a school hallway.  (Kevin was twelve at the time of the incident.)  The victim told a teacher about the incident, which was later reported to law enforcement.  In response, a school resource officer, Briana Propson, went to the school to question Kevin about the incident.[3]

## I.    The Suppression Hearing

¶4      The circumstances surrounding Kevin's interactions with the police were not disputed and are set forth below.  The relevant testimony at the hearing on Kevin's motion to suppress came from Officer Propson.  Kevin did not testify.

¶5      Propson testified about two interactions she had with Kevin the day after the incident.  The first interaction took place in the school resource officer's office, which she described as "a very small tight office … kind of like a closet" next to the student services area.  A school official sent Kevin to the office, where Propson and another resource officer who "was brand new [and] in field training" were waiting.  (Propson did not know whether Kevin "was asked or told to come to [the] office.")  Propson was wearing an "outer carrier vest …, dress pants, tennis shoes, and just a nice shirt," along with law enforcement identification.  The other officer, who was dressed in "full uniform," stood in front of the door to the office and did not speak during the interview.

---

[2] WISCONSIN STAT. § 940.225(3m) creates the offense of fourth-degree sexual assault, which occurs when a person "has sexual contact with [another] person without the consent of that person."  A violation of this statute is a Class A misdemeanor.  *Id.*

[3] Though there were security cameras in place at the school, no video footage of the incident exists.

¶6 Propson testified that the first interview, which she described as "conversational," lasted approximately ten minutes. During that time, the door to the office was closed "for privacy" because students were nearby in the student services area. Propson and Kevin were both seated during the interview at a distance that Propson described as roughly equal to that between Propson and the prosecutor at the suppression hearing. The trial court later estimated this distance to be about ten feet. One foot away on Kevin's right was an eight inch by eleven inch piece of white paper taped to the wall at eye level on which the following text appeared in blue and purple ink: "You Are in Here Voluntarily Unless Told Otherwise. You are Being Filmed And Can Leave at Any Time!" (The text was written in large letters that took up the entire page.) Neither Kevin nor Propson discussed the sign during the interview.

¶7 Propson confirmed that she did not give Kevin *Miranda* warnings before they began speaking or have him fill out a waiver of rights form. She acknowledged informing him at the start of the first interview that the incident had been witnessed, even though she did not know if there were any witnesses. Propson acknowledged that she was "not being completely truthful with [Kevin] at that point." She testified that Kevin initially "denied that anything was intentional" but later stated that "he accidentally, possibly, hit [the victim]" with his hand in the victim's "groin area."[4] Propson described his body language during the interview as "relaxed" and "comfortable" and agreed that "he was making sense and understood what he was taking about."

---

[4] Propson could not recall whether Kevin acknowledged touching the victim's groin area before or after she mentioned witnesses to the incident.

¶8      The second interview, which Propson recalled lasting "maybe two to three minutes," took place less than an hour later in the student services area.  In addition to Propson and the other officer, the school's assistant principal was present and did most of the questioning.  Kevin sat in a cubicle area while Propson and the assistant principal stood near him.  According to Propson, Kevin said during this second interview that he thought he "did it by accident."  Kevin was not arrested after the second interview but remained at school to serve a suspension.

¶9      Propson confirmed that at no point during either interview did Kevin ask to speak with a parent or indicate he did not want to speak with her.  She denied raising her voice or acting aggressively towards Kevin in the first interview but acknowledged "[m]aybe" raising her voice during the second interview.

¶10     The trial court denied Kevin's motion to suppress.  It recited some of the facts presented in the hearing testimony and did not expressly reject any testimony.  Based on the evidence presented, the court concluded that Kevin was not in police custody during either interaction, and thus, Propson was not required to give ***Miranda*** warnings before questioning him.  The court also concluded that Kevin's statements during the interviews were voluntary.

## II.     The Trial

¶11     At trial, the victim testified that he was standing in a school hallway when Kevin approached him and "touched [him] with a cupped hand" on his penis over his clothing as Kevin passed by him and went into a classroom.[5]  The victim

---

[5] On cross-examination, the victim acknowledged that he had described the contact in a statement he gave Officer Propson as being with an "open hand" rather than a cupped hand.

testified that the contact made him feel uncomfortable and that he shoved Kevin away and told a teacher what had occurred.

¶12    The State next called another student at school, Jonathan,[6] and asked him if Kevin had done anything to him that made him feel uncomfortable. Kevin's counsel raised "an other acts objection," but the trial court deferred a ruling, stating that it was the finder of fact and thus "probably more able … than a jury to disregard evidence that is deemed inadmissible."  Jonathan then testified that "we would sometimes punch each other, like, it's not harassment, but we would sometimes just like punch each other."  He confirmed that Kevin had hit him more than once in different parts of his body:

> Q    And did you tell Officer Propson that he has a habit of slapping you in the butt, or going for your balls?
>
> A    He would, because I don't really think he would hit me in the balls, because that's—one it hurts a lot, and two, it's very weird.  So most of the time he would hit stomach, kind of, or the back, the back near the butt.

Jonathan further acknowledged that he had given Propson the names of other boys Kevin had hit.

¶13    Propson testified about her first conversation with Kevin, stating that he initially "denied touching [the victim]" but "later … said he might have accidentally touched [the victim] when he walked past him and then continued to deny that he did anything wrong."  Propson also testified that she spoke with Jonathan in the course of her investigation and that he told her about incidents in which Kevin had hit him "with an open hand on the butt and in the groin area."

---

[6] Also a pseudonym.

¶14 After the close of evidence, the trial court overruled Kevin's other-acts objection:

> THE COURT: As I said. Well we don't have a motion to admit other acts, so I have not conducted a *Sullivan*[7] analysis as to any of this. But the testimony received as to a list of other kids in some other action was vague enough that I don't think I would be able to consider it as evidence of intent anyway. So, I will overrule the objection on that basis because I don't think the evidence, as that came in, was as potentially prejudicial as it may have appeared from the outset, thank you.

¶15 Following closing arguments, the court concluded that the State had met its burden to prove the elements of the charged offense—that is, that Kevin had sexual contact with the victim without the victim's consent by intentionally touching the victim's intimate parts with the intent to humiliate him. The court reviewed the testimony of the four witnesses which, in its view, left little dispute "that there was contact, and what I need to focus on is the intent of that contact." In determining that Kevin had acted with the requisite intent, the court emphasized the victim's reaction to the incident and description of how it occurred:

> And the testimony received was that, that belief that it was … not accidental was based on how [Kevin] was traveling down the hall, where he was standing, the fact that there were not enough other people around to shove … [Kevin] into [the victim], the method and means by which the hand made contact with the penis, so that was [the victim]'s impression of how this all played out.

The court stated further that it "[did not] draw a lot of evidentiary value from" Jonathan's testimony based on its impression of him as a nervous witness who "didn't want to be talking about what we were asking him to talk about … [six]

---

[7] *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

feet in front of a person he's still going to have to go to school with every single day" and its belief that his testimony "was very different from the statements he gave to Officer Propson." Based upon its findings, the court adjudicated Kevin delinquent.

## DISCUSSION

### I. Standard of Review

¶16 Kevin argues that the trial court erred in denying his motion to suppress incriminating statements he made during the two conversations with Propson. Whether statements should be suppressed is a question of constitutional fact. *State v. Johnson*, 2007 WI 32, ¶13, 299 Wis. 2d 675, 729 N.W.2d 182. This court reviews the trial court's historical findings of fact for clear error. *Id.* The application of constitutional principles to those facts presents a question of law that this court reviews independently. *Id.*

¶17 Kevin also challenges the trial court's decision to overrule his objection to Jonathan's testimony under WIS. STAT. § 904.04(2)(a). This court reviews that decision under the erroneous exercise of discretion standard. *See State v. Dorsey*, 2018 WI 10, ¶24, 379 Wis. 2d 386, 906 N.W.2d 158. That is, this court looks to see whether the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *See State v. Atwater*, 2021 WI App 16, ¶29, 396 Wis. 2d 535, 958 N.W.2d 533 (citation omitted). Courts generally look for reasons to sustain discretionary decisions and may not reverse them merely because they would exercise discretion to reach a different outcome. *See State v. Johnson*, 2021 WI 61, ¶34, 397 Wis. 2d 633, 961 N.W.2d 18. Instead, the trial court's decision may only be set aside if it "applied the wrong legal standard or

did not ground its decision on a logical interpretation of the facts." ***State v. Wiskerchen***, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730 (citation omitted).

### II. Kevin Was Not in Custody When the Police Questioned Him.

¶18 The United States and Wisconsin constitutions each require that law enforcement officers inform suspects of their rights to remain silent and to have an attorney present during custodial interrogations.[8] ***State v. Bartelt***, 2018 WI 16, ¶27, 379 Wis. 2d 588, 906 N.W.2d 684. It is undisputed that Kevin was not provided ***Miranda*** warnings before or during either interview with Propson. The parties dispute whether Kevin was in custody during each interview, such that ***Miranda*** warnings were necessary for the statements to be admissible.

¶19 A custodial interrogation is one that occurs where "there is a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest." ***Bartelt***, 379 Wis. 2d 588, ¶31 (quoting ***State v. Lonkoski***, 2013 WI 30, ¶27, 346 Wis. 2d 523, 828 N.W.2d 552). "A person is in 'custody' if under the totality of the circumstances 'a reasonable person would not feel free to terminate the interview and leave the scene.'" ***Lonkoski***, 346 Wis. 2d 523, ¶6 (quoting ***State v. Martin***, 2012 WI 96, ¶33, 343 Wis. 2d 278, 816 N.W.2d 270).

¶20 The test to determine whether a person is in custody for purposes of ***Miranda*** is an objective one. ***Bartelt***, 379 Wis. 2d 588, ¶31. In ascertaining how a reasonable person would have gauged his or her freedom of movement, this

---

[8] Specifically, these requirements are grounded in the Fifth Amendment to the United States Constitution and article I, section 8(1) of the Wisconsin Constitution. ***State v. Bartelt***, 2018 WI 16, ¶26, 379 Wis. 2d 588, 906 N.W.2d 684.

court considers the totality of the circumstances. *Id.*, ¶32. Relevant factors include the purpose, location, and duration of the questioning; the degree of physical restraint used by the police; whether the person was moved to another location for purposes of the interview; the number of officers involved; the statements made during the interview; and whether the person was allowed to leave at the conclusion of the interview. *Id.*; *Howes v. Fields*, 565 U.S. 499, 509 (2012). It is also appropriate to consider Kevin's age in the custody analysis because "[i]t is beyond dispute that children will often feel bound to submit to police questioning when an adult in the same circumstances would feel free to leave." *See J.D.B. v. North Carolina*, 564 U.S. 261, 264-65 (2011).

¶21 The State bears the burden of proving that Kevin was not in custody by a preponderance of the evidence. *See State v. Harris*, 2016 WI App 2, ¶9, 366 Wis. 2d 777, 874 N.W.2d 602 (2015), *aff'd*, 2017 WI 31, 374 Wis. 2d 271, 892 N.W.2d 663.

¶22 To begin, this court must keep Kevin's age—twelve at the time of the interviews—in mind when considering whether a reasonable person in his shoes would have felt free to end the interviews. Kevin's youth weighs in favor of a conclusion that he was in custody.

¶23 Turning to the purpose, location, and duration of the questioning, the State concedes that the interviews concerned "a serious matter, a sexual assault." The first interview occurred in a small office reserved for the school's resource officer, while the second occurred in a cubicle in the nearby student services area. Propson did not stand over or crowd Kevin during the first interview but instead sat approximately ten feet away from him. A student's freedom of movement in school is somewhat restricted in that the student is generally confined to a building

or premises, but it is nonetheless noteworthy that neither interview took place in a more restrictive setting such as a police station or vehicle. In addition, a sign in the office where the first interview occurred alerted Kevin that he could leave at any time. The sign was one foot away from the chair in which Kevin sat, positioned at Kevin's eye level, and the text was displayed in easily readable letters. Although neither Kevin nor Propson discussed the sign during the interview, its presence alone would alert a reasonable person in Kevin's position that he could end the interview if he wished. Finally, both interviews were very short—the first lasting about ten minutes and the second lasting two or three. The brief duration also weighs in favor of a conclusion that Kevin was not in custody.

¶24 This court next examines the degree of restraint used during the interviews. When examining this factor, courts consider whether a suspect is handcuffed or frisked; whether any weapons are drawn; whether the suspect is moved to another location for questioning; whether questioning takes place in a police vehicle; and how many officers are involved. *State v. Gruen*, 218 Wis. 2d 581, 594-96, 582 N.W.2d 728 (Ct. App. 1998). Here, there is no suggestion that Kevin was placed in handcuffs or subjected to any type of search of his person. Nor is there any indication that either officer drew or referred to a weapon at any point during either interview. Kevin was not taken by the officers to a different location for questioning and was not questioned in a police station or a police vehicle. Finally, although Kevin was not allowed to leave school following each interview, he was not arrested or detained by the officers. Taken together, these factors support a conclusion that there was no restraint on Kevin's freedom of movement comparable to a formal arrest during either interview.

¶25 Kevin disagrees, arguing that a reasonable juvenile in his shoes would not feel free to leave an interrogation about a serious sexual offense

conducted in a police officer's office with an armed officer in full uniform blocking the door after being sent to the office by a school official. This court acknowledges that these facts make the custody inquiry, in the trial court's words, "a somewhat close case." Like the trial court, this court is concerned with the presence of the second officer, in particular during the first interview. That officer, dressed in full uniform, did not participate in the questioning but instead stood in front of the closed office door. In addition, Kevin was sent to the resource officer's office by a school official.

¶26 Other factors support the opposite conclusion. Kevin went to the office willingly and was never told he could not leave. To the contrary, a prominently displayed sign on Propson's office wall informed Kevin that he could leave if he wished. In addition, both interviews were short, Propson wore civilian clothes, Kevin was not physically restrained, and was allowed to return to school after the first interview. Finally, as the trial court concluded, the second officer's lack of involvement in the questioning "minimize[d] his role" in the interview. Though the question is close, based on all of the circumstances surrounding each interview, this court concludes that Kevin was not restrained in his movements to a degree comparable to a formal arrest. The preponderance of the evidence supports the conclusion that Kevin was not in custody for *Miranda* purposes during either interview. Thus, the police were not required to give him *Miranda* warnings before questioning him.

### III. Kevin's Statements Were Given Voluntarily.

¶27 This court next considers Kevin's argument that his inculpatory statements to the officers should have been suppressed because they were not voluntary. The federal and state constitutions require a statement to be voluntary

to be admissible into evidence.[9]  ***State v. Vice***, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1.  A person's "statements are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by ... the State exceeded the [person]'s ability to resist."  ***Id.***, ¶29 (quoting ***State v. Davis***, 2008 WI 71, ¶36, 310 Wis. 2d 583, 751 N.W.2d 332).

¶28  A threshold question for the voluntariness analysis is whether the person's statements have been obtained through the use of coercive or improper police practices.  ***Vice***, 397 Wis. 2d 682, ¶31.  "[W]ithout coercion, there is no involuntariness."  ***Id.***, ¶35.  "[E]stablishing coercion is a high bar for a defendant to surmount."  ***Id.***, ¶32.  ***Vice*** provides examples of coercive police practices, including physical violence, sleep and food deprivation, and threats, ***id.***, ¶34, though in particular cases, more subtle coercion may violate due process, ***id.***, ¶32. *See also* ***State v. Jerrell C.J.***, 2005 WI 105, ¶19, 283 Wis. 2d 145, 699 N.W.2d 110 (observing that police conduct need not be egregious or outrageous to be coercive).  Among the factors this court may consider in evaluating the police tactics and pressures used are

> the length of the questioning, any delay in arraignment, the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response, and whether the defendant was informed of the right to counsel and right against self-incrimination.

***State v. Hoppe***, 2003 WI 43, ¶39, 261 Wis. 2d 294, 661 N.W.2d 407.

---

[9]  The voluntariness requirement is grounded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution.  ***State v. Vice***, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1.

¶29 If a defendant establishes coercive or improper police practices, this court must consider whether those practices produced an involuntary confession. "That analysis involves balancing the suspect's personal characteristics, such as age, intelligence, physical and emotional condition, and prior experience with law enforcement, against any pressures imposed upon him by police." *Vice*, 397 Wis. 2d 682, ¶30. As in the *Miranda* context, age is an important factor "in determining whether a juvenile confession is voluntary." *Jerrell C.J.*, 283 Wis. 2d 145, ¶25. "When a suspect is a juvenile, 'special caution' must be taken with the methods of interrogation used when 'a parent, lawyer, or other friendly adult' is not present." *State v. Moore*, 2015 WI 54, ¶57, 363 Wis. 2d 376, 864 N.W.2d 827 (quoting *Jerrell C.J.*, 283 Wis. 2d 145, ¶21).

¶30 In evaluating whether a person's will was overcome, this court considers the totality of the circumstances. *Jerrell C.J.*, 283 Wis. 2d 145, ¶20. As with *Miranda*, the State must prove that statements were obtained voluntarily by a preponderance of the evidence. *See Jerrell C.J.*, 283 Wis. 2d 145, ¶17.

¶31 This court starts by examining the tactics used by the officers. First, the length of the interviews, which is "an important factor in evaluating police behavior," *see Jerrell C.J.*, 283 Wis. 2d 145, ¶32, was brief. Neither interview lasted more than ten minutes. Kevin was not kept waiting for significant periods of time before questioning began and was not subject to hours of questioning without breaks. The short duration contrasts sharply with the facts in *Jerrell C.J.*, in which the juvenile was "left alone [in an interrogation room] for approximately two hours" and "then interrogated for five-and-a-half more hours before finally signing a written confession." *Id.*, ¶33. Here, it supports the conclusion that the police did not act coercively or improperly.

¶32     Next, as to the general conditions in which the interviews occurred, Kevin emphasizes that (1) the officers conducted the first interview in the small resource officer's office; (2) they outnumbered Kevin, and the officer in full uniform stood in front of the only exit; (3) no "parent or other friendly adult" was present for either interview; and (4) the second interview involved the two officers and an additional authority figure, the assistant principal, all of whom stood over Kevin as he sat in the cubicle.  This court acknowledges that a juvenile directed by a school official to a small office containing two police officers, one of whom proceeds to question him about a serious criminal offense, is likely to experience some increased level of stress and to feel pressured to answer the officer's questions.  At the same time, however, the evidence showed that the officers did not physically restrain Kevin, that he appeared relaxed and comfortable during the interview, and that he never asked to leave or to speak with a parent.  These facts suggest that no "*excessive* physical or psychological pressure" was brought to bear on him.  *See Hoppe*, 261 Wis. 2d 294, ¶39 (emphasis added).

¶33     With respect to inducements, threats, methods, or strategies used by the officers, Kevin highlights two.  First, Propson began the first interview by telling Kevin that someone had witnessed the incident when she was unaware whether there were any witnesses and by asserting that the incident had, in fact, occurred.  Second, Propson acknowledged that she may have raised her voice during the second interview.  In this court's view, these acts were not improper or so coercive that they overwhelmed Kevin's ability to resist.  To be sure, the use of deceptive questioning implying that evidence against a suspect exists is a factor to be considered.  *See State v. Triggs*, 2003 WI App 91, ¶17, 264 Wis. 2d 861, 663 N.W.2d 396.  But this court is not convinced that this tactic overcame Kevin's will, even when considered in light of the other conditions in which the first

interview took place. Nor does the possibility that Propson raised her voice during the second interview establish that she acted improperly or coercively. In addition, no evidence was presented tending to show that the officers used any inducements or made any threats to elicit incriminating statements from Kevin. The officers were not physically violent towards Kevin, nor did they deprive him of sleep, food, or anything else he requested.

¶34 Finally, it is undisputed that Kevin was not informed of his rights to counsel and to refrain from incriminating himself. Notwithstanding the lack of these warnings, however, this court concludes that the facts here do not clear the "high bar" of demonstrating that the officers used coercion or otherwise improper conduct to obtain inculpatory admissions from Kevin. *See Vice*, 397 Wis. 2d 682, ¶32. Absent coercive or otherwise improper police conduct, Kevin cannot show that his statements to the officers were involuntary.

## IV. Any Error in Denying Kevin's Other-Acts Objection Was Harmless.

¶35 Kevin's final argument is that the trial court erroneously exercised its discretion in denying his objection to Jonathan's testimony about other incidents in which Kevin and others at school hit or punched each other and Propson's testimony that Jonathan told her that Kevin had hit him with an open hand on his buttocks and groin area. Kevin argues that this testimony was not admissible under WIS. STAT. § 904.04 because it was evidence of other acts that was offered to prove "that there was a pattern of behavior among the peer group, in order to prove by improper means that Kevin touched [the victim]" intentionally and with intent to humiliate him.

¶36   WISCONSIN STAT. § 904.04(2)(a) prohibits "evidence of other crimes, wrongs, or acts … to prove the character of a person in order to show that the person acted in conformity therewith."  This prohibition does not apply if "the evidence [is] offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*  The admissibility of other-acts evidence is governed by a three-part test set forth in *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).  Under that test, the evidence is admissible if (1) it is offered for a permissible purpose under § 904.04(2)(a); (2) the evidence is relevant; and (3) the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice or one of the other countervailing considerations in WIS. STAT. § 904.03.  *State v. Dorsey*, 2018 WI 10, ¶39, 379 Wis. 2d 386, 906 N.W.2d 158; *see also Sullivan*, 216 Wis. 2d at 772-73.

¶37   In overruling Kevin's objection, the trial court acknowledged that it had not assessed the admissibility of Jonathan's testimony and Propson's testimony under the *Sullivan* test.  Instead, the court gave two reasons in support of its decision.  First, the court described the testimony about the acts of other kids at the school as "vague enough that I don't think I would be able to consider it as evidence of intent anyway."  The court also stated that it did not consider the evidence "as potentially prejudicial as it may have appeared from the outset."

¶38   The trial court's remarks can be interpreted in multiple ways.  On one hand, its description of the evidence as too vague to be considered on the issue of intent suggests that the court believed the evidence to be relevant but of low probative value on that issue.  Alternately, it is reasonable to construe the court's

description of the evidence as suggesting that it was not relevant to intent or any other admissible purpose under WIS. STAT. § 904.04(2)(a).[10]

¶39 Ultimately, this court need not resolve the ambiguity in the trial court's remarks. Even if the trial court erroneously exercised its discretion in admitting Jonathan's and Propson's testimony about Kevin and others engaging in physical contact with other students similar to that underlying the charge in this case, that error would be harmless. *See* WIS. STAT. § 901.03(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."); *Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698 ("An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial. The appellate court must conduct a harmless error analysis to determine whether the error 'affected the substantial rights of the party.'").

¶40 "For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Id.*, ¶32. "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (citing

---

[10] As additional support for the trial court's decision to overrule Kevin's objection, the State cites WIS. STAT. § 904.04(2)(b)1., which permits greater latitude in admitting other-acts evidence. That provision states in relevant part that

> [i]n a criminal proceeding alleging … the commission of a serious sex offense, as defined in [WIS. STAT. §] 939.615(1)(b), … evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act.

This provision does not apply to the present case because Kevin was adjudicated delinquent under WIS. STAT. § 940.225(3m), which is not a "serious sex offense" as defined in § 939.615(1)(b).

***State v. Dyess***, 124 Wis. 2d 525, 544-45, 370 N.W.2d 222 (1985)). Here, the trial court's oral ruling makes clear that it relied principally on the victim's testimony in establishing Kevin's violation of WIS. STAT. § 940.225(3m). The court specifically stated that it did not derive "a lot of evidentiary value" from Jonathan's testimony and did not refer to Propson's testimony about Jonathan's statement to her about Kevin hitting him. Because the court placed so little weight on the testimony Kevin argues was inadmissible under WIS. STAT. § 904.04(2)(a), there is not a reasonable possibility that its admission, if erroneous, contributed to the court's finding of delinquency.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.